UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KUNES COUNTRY AUTOMOTIVE MANAGEMENT
INC., and IGNITION DEALER SERVICES, INC.,

          Plaintiffs,

                                   Case No. 23-cv-1204-bhl

   v.

SPENCER WALTERS, et al.,

          Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

---

      This lawsuit is fallout from a failed business relationship that lasted less than two years. The basic chronology of that failed relationship is set forth in an 86-page, 354-paragraph Amended Complaint filed by Plaintiffs Kunes Country Automotive Management, Inc. d/b/a Kunes Auto Group (Kunes) and its affiliate, Ignition Dealer Services, Inc. (IDS). Far from a "short and plain" statement of the basis for their claims, Plaintiffs' Amended Complaint is filled with repetitive and conclusory assertions and over-the-top rhetoric that culminate in 20 different causes of action against six Defendants. Three of the defendants are Plaintiffs own former employees—Spencer Walters, Christbell "KC" Hwang, and Michael Barkes. Two others—Consumer Retention Team, LLC d/b/a Choice Auto Lending (CRT), and Everly Investments, LLC (Everly)—are entities associated with Walters. The Court will refer to these five defendants as the "Walters Defendants." The sixth defendant is Sidecars, Inc. d/b/a TruWarranty (TruWarranty), a former contract partner of Plaintiffs.[1] Plaintiffs seek to impose liability on the defendants through a multitude of state and federal legal theories, including multiple tort claims and alleged violations of the Lanham Act, the Computer Fraud and Abuse Act, and the Racketeer Influenced and Corrupt Organizations Act (RICO).

---

[1] The Amended Complaint also asserts claims against a different contract partner, Defendant Equity 4 U, Inc. (E4U). At a February 2, 2024 hearing, the Court dismissed Plaintiffs' claims against E4U on *forum non conveniens* grounds. (ECF No. 70.)

Defendants have filed two motions to dismiss. TruWarranty seeks dismissal of Plaintiffs' fraud, Lanham Act and RICO claims. (ECF No. 47.) The Walters Defendants seek dismissal of the same claims, plus ten others. (ECF No. 74.) For the reasons stated below, the motions are granted in part and denied in part. In sum, Plaintiffs' conclusory assertions and rhetoric are insufficient to support many of their claims. Indeed, several of the theories Plaintiffs invoke simply do not apply to the basic factual narrative they offer. But not all of Plaintiffs' claims are flawed; some of those challenged are pleaded with sufficient plausibility to survive Defendants' attacks, at least at the pleading stage. Going forward, the Court encourages the parties to focus discovery on the facts and claims actually implicated by Defendants' alleged misconduct.

## BACKGROUND ALLEGATIONS[2]

Kunes is a Wisconsin corporation that is among the largest motor vehicle and RV dealers in the country. (ECF No. 12 ¶¶2, 22.) In the late 2010s, Kunes began exploring opportunities to expand into the motor vehicle finance and insurance (F&I) products and services market. (*Id.* ¶23.) These efforts led Kunes to form IDS in August 2021 as a platform to market F&I products and programs. (*Id.* ¶24.) Among the vendors whose F&I products Plaintiffs sold were TruWarranty and E4U. (*Id.* ¶¶10, 24, 120.) Plaintiffs marketed and sold TruWarranty products beginning as early as November 2020. (*Id.* ¶120.) Kunes contracted to market E4U's F&I services beginning in October 2019. (ECF No. 43 at 2.)

In connection with its F&I ambitions, Kunes entered into a contract with Walters in November 2020. (ECF No. 12 ¶42.) Walters had experience with motor vehicle F&I products and services, and Kunes hired him as its Automotive F&I Director to help facilitate Kunes's entry into the F&I market. (*Id.* ¶¶42–43.) Before joining Kunes, Walters had his own company, CRT, through which he offered F&I products and services to dealerships and finance companies in exchange for commissions on the resulting sales. (*Id.* ¶43.) Kunes's decision to hire Walters was expressly conditioned on him ceasing all active involvement in CRT's operations, but Kunes permitted him to maintain a passive ownership interest in CRT. (*Id.* ¶45.) Walters also agreed he would solicit F&I clients solely on Kunes's behalf. (*Id.*)

Initially hired as an independent contractor, Walters became a Kunes employee on January 1, 2021 and signed a "First Pay Plan." (*Id.* ¶¶42, 46.) One year later, on January 28, 2022, Walters

---

[2] This Background is derived from Plaintiffs' Amended Complaint, ECF No. 12, the allegations in which are presumed true when considering a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

became IDS's Chief Operating Officer (COO) and signed a Second Pay Plan. (*Id.* ¶49.) Plaintiffs also required Walters to sign an "Employee Confidential Information Assignment Agreement and Restrictive Covenant Agreement," in which he agreed not to contract, employ, or solicit adverse to them, with a carve-out for his "current activities" with CRT. (*Id.* ¶¶50–56.) He further agreed not to disclose Plaintiffs' confidential information. (*Id.* ¶¶58–59.)

After being hired, Walters was responsible for conducting a bidding process to identify new F&I vendors for Kunes and IDS. (*Id.* ¶86.) This process included developing a request for proposal (RFP), identifying potential vendors, circulating the proposal materials to them, and reviewing responses. (*Id.* ¶87.) After circulating a draft RFP internally at Kunes, Walters disseminated the RFP materials to several F&I product vendors. (*Id.* ¶¶88–89.) TruWarranty responded in early June 2021 with a bid and rate card that Walters then forwarded to Kunes's Chief Financial Officer. (*Id.* ¶90.) The rate card did not disclose that, in addition to the administrative fees TruWarranty was quoting, TruWarranty agreed it would pay Walters and/or CRT a $2 "kickback" on each sale of a TruWarranty F&I product to a Kunes customer. (*Id.*)

In conjunction with the bidding process, Walters provided TruWarranty's Chief Executive Officer, Garen McMillian, with a competitor's bid information, and together they "strategize[d] how to sabotage [the competitor's] chances of securing Plaintiffs' business in favor of Plaintiffs selecting TruWarranty as their new F&I Product Vendor." (*Id.* ¶92.) Walters ultimately recommended TruWarranty to Kunes's executive team as the most competitive bid received. (*Id.* ¶95.) In doing so, Walters again failed to disclose the "kickback" he was to receive from TruWarranty. (*Id.*) He also intentionally misrepresented the competitor's bid to make it appear less attractive. (*Id.*)

In July 2021, members of Kunes's executive team flew to Joplin, Missouri to meet with TruWarranty. (*Id.* ¶97.) During this meeting, Kunes told TruWarranty that it expected them to "operate their partnership as a direct model and that [Kunes]—not CRT or Walters individually—[would be] TruWarranty's agent for marketing TruWarranty's F&I Products." (*Id.* ¶98.) TruWarranty, by and through McMillian, expressly acknowledged this understanding. (*Id.*) Later that month, McMillian flew to Wisconsin to meet with Kunes's executive team, and Kunes formally agreed to make TruWarranty its new F&I products vendor. (*Id.* ¶101.) McMillian did not disclose TruWarranty's "secret agreement" with Walters during either meeting. (*Id.* ¶¶168–69, 172.)

Despite their partnership with TruWarranty, Plaintiffs expected to "work with a variety of F&I Products Vendors to achieve the best product and pricing possible in competing for client business." (*Id.* ¶103.) Under Walters's leadership, however, Plaintiffs "sold almost exclusively TruWarranty's F&I Products." (*Id.*) Plaintiffs allege that TruWarranty paid more than $760,000 to Walters pursuant to their secret agreement. (*Id.* ¶123.) Walters received this money either personally or through CRT and Everly, the latter of which Walters formed for the purpose of receiving kickbacks from TruWarranty. (*Id.* ¶120.)

Walters had a similar secret agreement with E4U under which he received commissions on all new business E4U generated with Plaintiffs. (*Id.* ¶127.) Walters concealed these commissions as well, including affirmatively misrepresenting to Plaintiffs on multiple occasions that he was not receiving commissions from E4U. (*Id.* ¶¶126–29.) He also concealed the nature and extent of his relationship with E4U, including the extent of his ownership stake in E4U and the activities he undertook on behalf of E4U to Plaintiffs' detriment. (*Id.* ¶¶155–57.)

On Walters's recommendation, IDS hired additional personnel for its F&I venture. On January 3, 2022, at Walters's urging, IDS hired Hwang as its Vice President of Reinsurance and Operations. (*Id.* ¶66.) Several months later, in July 2022, Plaintiffs and Walters agreed to transition all CRT employees to IDS. (*Id.* ¶77.) The transitioned employees would be permitted to service existing CRT accounts (with IDS's assistance) but were required to solicit new clients solely on IDS's behalf and to work primarily on behalf of IDS. (*Id.*) In exchange for IDS onboarding the CRT employees and providing support services to existing CRT accounts, Walters and CRT agreed "to pay IDS 23% of its monthly portfolio." (*Id.*) Shortly thereafter, on August 1, 2022, and again on Walters's recommendation, IDS hired Barkes as its Regional Sales Director. (*Id.* ¶75.) Barkes had been among the CRT employees transitioned to IDS, and, during all relevant periods, he was also employed as President of CRT. (*Id.* ¶76.) Both Hwang and Barkes became high-level employees of IDS and were "given access to a wide variety of Plaintiffs' confidential and trade secret information." (*Id.* ¶¶70–72, 81–83.)

In August and September 2022, Walters, Hwang, and Barkes each resigned from IDS. (*Id.* ¶¶133, 139, 156(q).) Following their departures, Plaintiffs learned that Walters, Hwang, and Barkes had secretly been working on behalf of TruWarranty and CRT to defraud Plaintiffs and steal their clients. (*Id.* ¶147.) Specifically, Walters, Hwang, and Barkes used their positions at IDS to convince Plaintiffs' clients to do business with CRT or TruWarranty instead of IDS. (*Id.*)

Before resigning, Walters, Hwang, and Barkes also accessed and copied Plaintiffs' trade secret and confidential information and "directly or indirectly" shared that information with CRT, TruWarranty, and others. (*Id.* ¶¶112–15.) They also deleted multiple leads from Plaintiffs' client management system. (*Id.* ¶151.) And, after resigning, they contacted or visited numerous IDS clients and engaged in "deceptive activities calculated to interfere with Plaintiffs' existing and prospective business relationships." (*Id.* ¶148.) This misconduct included misleading IDS clients into believing they needed to sign new contracts with CRT or TruWarranty, without informing those clients that Walters, Hwang, and Barkes no longer worked for IDS. (*Id.* ¶149.) Walters, Hwang, and Barkes engaged in these activities on TruWarranty's behalf and their actions interfered with Plaintiffs' relationships with several existing and prospective clients. (*Id.* ¶¶147–51.) At this same time, TruWarranty had IDS's website shut down. (*Id.* ¶153.)

**LEGAL STANDARD**

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inference in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint will survive if it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A plaintiff's pleading obligations are greater when asserting claims of fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This heightened pleading requirement is a response to the 'great harm to the reputation of a business firm or other enterprise a fraud claim can do.'" *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (quoting *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999)). A plaintiff claiming fraud "must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Id.* (quoting *Payton*, 184 F.3d at 627). Thus, "[a] complaint alleging fraud must provide 'the who, what, when, where, and how.'" *Id.* (quoting *United States ex rel. Gross v. AIDS Rsch. All.–Chi.*, 415 F.3d 601, 605 (7th Cir. 2005)).

**ANALYSIS**

Both TruWarranty and the Walters Defendants seek dismissal of Plaintiffs' fraud, Lanham Act, and RICO claims. The Walters Defendants additionally argue for dismissal of Plaintiffs' tort claims for unjust enrichment, conversion, breach of fiduciary duty, aiding and abetting, and civil conspiracy; Plaintiffs' state law statutory claims for civil theft, identify theft, and theft of trade secrets; and Plaintiffs' breach of contract claim against CRT.[3] The Court is persuaded by only some of Defendants' arguments. Accordingly, as explained below, the Court will grant both motions in part and deny them in part.

**I.     Plaintiffs Have Stated Fraud Claims Against TruWarranty and Walters, but Their Lanham Act and RICO Allegations Are Insufficient.**

The Court will first address the claims that are challenged by all Defendants. Both TruWarranty and the Walters Defendants seek dismissal of five counts of the Amended Complaint: Count Two—fraud/intentional misrepresentation; Counts Sixteen and Seventeen—violations of the Lanham Act; and Counts Nineteen and Twenty—violations of RICO and conspiring to violate RICO. Contrary to Defendants' assertions, the Court concludes that Plaintiffs have pleaded just enough to state fraud claims against TruWarranty and Walters. But the Court agrees with Defendants that Plaintiffs have not stated plausible claims under the Lanham Act and RICO.

**A.     Plaintiffs' Fraud Claims Against TruWarranty and Walters Are Sufficiently Particularized to Survive Dismissal.**

In Count Two of the Amended Complaint, Plaintiffs assert claims for fraud/intentional misrepresentation against Walters and TruWarranty. Plaintiffs allege that Walters and TruWarranty fraudulently concealed "secret kickbacks" paid by TruWarranty to Walters with the intent to deceive and induce Plaintiffs to partner with TruWarranty and market its products. (ECF No. 12 ¶¶168–72.) They further allege that Walters misrepresented "that TruWarranty offered the most competitive bid for Plaintiffs' business." (*Id.* ¶167.) Separately, Plaintiffs allege that Walters affirmatively misrepresented that he was not receiving commissions from E4U and otherwise concealed those commissions with the intent to deceive and induce Plaintiffs to increase the volume of E4U sales. (*Id.* ¶¶175–78.)

---

[3] The Walters Defendants also assert that the Amended Complaint should be dismissed in its entirety as lacking sufficient clarity under Rule 8. (*See* ECF No. 74 at 15–16.) This argument overstates what Rule 8 requires. *See Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (explaining that Rule 8 requires that defendants be given fair notice of the claims against them). While the Amended Complaint could certainly be drafted more concisely, it is not so verbose that Defendants lack notice of Plaintiffs' claims. The Court thus rejects this play for a global dismissal.

Defendants' dismissal arguments somewhat overlap. TruWarranty argues that Plaintiffs have failed to plead their fraud claim against it with the particularity required by Rule 9(b) and insists that Plaintiffs have not alleged sufficient facts to support a finding that TruWarranty had a duty to disclose the "kickbacks" it allegedly paid Walters. (ECF No. 48 at 16–19.) Walters also invokes Rule 9(b), but additionally seeks dismissal based on Wisconsin's economic loss doctrine, Plaintiffs' failure to make any "non-conclusory allegations" that Walters misrepresented the strength of TruWarranty's bid, and the lack of materiality of the alleged "kickbacks" paid to him. (ECF No. 74 at 16–18.) While the Court shares some of TruWarranty's and Walters's skepticism toward Plaintiffs' fraud claims, their allegations against both defendants are sufficient to survive a motion to dismiss.

Plaintiffs label their claim both "fraud" and "intentional misrepresentation." These terms are interchangeable under Wisconsin law.[4] *State v. Jadowski*, 680 N.W.2d 810, 812 n.2 (Wis. 2004). To state a claim for fraud, a plaintiff must allege: (1) a factual representation; (2) which was false; (3) made by the defendant with knowledge or reckless disregard of its falsity; (4) with the intent to defraud and induce the plaintiff to act; (5) that the plaintiff believed to be true and relied on to its detriment. *Kaloti Enters. v. Kellogg Sales Co.*, 699 N.W.2d 205, 211 (Wis. 2005) (quoting *Ramsden v. Farm Credit Servs. of N. Cent. Wis. ACA*, 590 N.W.2d 1, 7 (Wis. Ct. App. 1998)). "[F]ailure to disclose a material fact" may also give rise to an intentional misrepresentation claim, but only when the defendant has a duty to disclose. *Id.* at 211–12 (quoting *Ramsden*, 590 N.W.2d at 7; *Southard v. Occidental Life Ins. Co.*, 142 N.W.2d 844, 848 (Wis. 1966)). Fraud claims are expressly subject to Rule 9(b)'s heightened pleading standard, and thus a plaintiff pursuing a fraud cause of action must specifically allege the "identity of the person making the misrepresentation, the time, place, and context of the misrepresentation, and the method by which the misrepresentation was communicated." *Radiator Express Warehouse, Inc. v. Shie*, 708 F. Supp. 2d 762, 770 (E.D. Wis. 2010) (quoting *Wade v. Hopper*, 993 F.2d 1246, 1250 (7th Cir. 1993)).

---

[4] The parties agree that Wisconsin law governs the Amended Complaint's common-law claims. (*See* ECF No. 48 at 17; ECF No. 61 at 17; ECF No. 74 at 17.)

1. **While Questionable, Plaintiffs Have Sufficiently Alleged a Fraudulent Non-Disclosure Claim Against TruWarranty.**

The Amended Complaint alleges that TruWarranty agreed to pay "secret commissions" or "kickbacks" to Walters (and/or CRT and Everly) on business that Plaintiffs signed up with TruWarranty and that TruWarranty had and breached a duty to disclose these secret commissions. (ECF No. 12 ¶¶168—69.)[5]  Under Wisconsin law, a party to an arms-length business transaction has a duty to disclose only where:  (1) the fact is material to the transaction; (2) the party knows that the other party is mistaken as to the fact; (3) the fact is "peculiarly and exclusively" within the knowledge of one party and the other party could not reasonably expected to discover it; and (4) on account of the objective circumstances, the mistaken party would reasonably expect disclosure. *Kaloti*, 699 N.W.3d at 213.  "A fact is material if a reasonable [contracting party] would attach importance to its existence or nonexistence in determining the choice of action in the transaction in question."  *Ollerman v. O'Rourke Co.*, 288 N.W.2d 95, 107 (Wis. 1980).

TruWarranty offers four main arguments for dismissal.  First, invoking Rule 9(b), TruWarranty contends that Plaintiffs have failed to plead facts establishing that TruWarranty had a duty to disclose to Plaintiffs.  (ECF No. 48 at 17–18.)  Second, TruWarranty insists that the allegedly undisclosed fact—its secret commission payments to Walters—cannot have been material to Plaintiffs because Plaintiffs' relationship with Walters was a matter between those two parties, and any commissions that TruWarranty paid Walters could have had no impact on TruWarranty's business dealings with Plaintiffs.  (*Id.* at 18.)  Third, TruWarranty argues that the commissions were not within TruWarranty's peculiar and exclusive knowledge given that Plaintiffs' own employee—Walters—was aware of them.  (ECF No. 69 at 9–10.)  Fourth, TruWarranty contends that the facts alleged fall short of the "extreme circumstances required to find a duty to disclose in an arm's-length transaction."  (*Id.* at 10.)

Without commenting on whether Plaintiffs can successfully prove their fraud claim, the Court concludes it would be premature to adjudicate this claim without discovery, given the confusing nature of the parties' tripartite relationship.  TruWarranty's invocation of Rule 9(b) is also understandable, but, after parsing the Amended Complaint, the Court concludes Plaintiffs

---

[5] In their briefing, Plaintiffs try to recast their fraud claim, suggesting that TruWarranty committed fraud by failing "to disclose its agency relationship with Walters/CRT" and by "affirmatively l[ying] to Plaintiffs about the secret kickbacks it paid to Walters/CRT."  (ECF No. 61 at 17, 19.)  These are not the fraud claims pleaded in the Amended Complaint.

have included just enough detail to survive a motion to dismiss on their non-disclosure allegations. Plaintiffs allege that, during two July 2021 meetings, TruWarranty's CEO failed to disclose to Kunes executives a material fact (its kickbacks to Walters) that induced Plaintiffs to partner with TruWarranty and market its F&I products. (ECF No. 12 ¶¶98–102, 168–72.) Without giving Plaintiffs any undue credit for the clarity of their pleadings, these allegations are sufficiently particularized to state a claim for fraud against TruWarranty. The Court also notes that, at this stage, Plaintiffs' allegations are presumed true and must be given all reasonable inferences. Given what has been pleaded, a jury could infer that Plaintiffs were fraudulently deceived into contracting with TruWarranty by the collective actions of TruWarranty and Walters and that Plaintiffs would not have chosen to partner with TruWarranty if Plaintiffs had known of the secret kickbacks. (*See* ECF No. 61 at 18.)

The Court rejects TruWarranty's invitation to determine now whether Walters's knowledge of the non-disclosed fact and his position as Plaintiffs' employee precludes any actionable nondisclosure claim. Plaintiffs allege that Walters's interests were adverse to their own, and, if TruWarranty knew of any improper hidden self-dealing, a duty to disclose might arise. Likewise, it is not yet appropriate for the Court to determine whether the circumstances would have justified a reasonable expectation of disclosure. This is an inherently factual issue that should await discovery. TruWarranty's motion to dismiss the fraud claim is therefore denied.

### 2. Plaintiffs Have Also Sufficiently Pleaded Their Fraud Claim Against Walters.

The Amended Complaint alleges that Walters also fraudulently concealed that TruWarranty was paying him "secret kickbacks." Plaintiffs further allege that Walters affirmatively misrepresented that he was not receiving commissions from E4U and "that TruWarranty offered the most competitive bid for Plaintiffs' business." (ECF No. 12 ¶¶167–78.)[6]

Walters argues for dismissal based on the economic loss doctrine and Plaintiffs' failure to support their fraud allegations by more than conclusory assertions. (ECF No. 74 at 16–17.) He also insists the commissions paid to him are not material to any alleged fraud and that Plaintiffs' allegations concerning E4U lack the particularity Rule 9(b) requires. (*Id.* at 17–18.) None of these arguments warrant dismissal.

---

[6] As with their claim against TruWarranty, Plaintiffs try to avoid dismissal of their fraud claim against Walters by arguing fraud claims not actually set forth in their pleading. The Court will again address only the fraud claims actually pleaded.

Walters's invocation of the economic loss doctrine is premised on his contention that Plaintiffs' fraud claims are barred because Plaintiffs "have contract claims against Walters for the complained of conduct." (*Id.* at 16–17.) This misunderstands Wisconsin law. "The economic loss doctrine . . . seeks to preserve the distinction between contract and tort." *Ins. Co. of N.A. v. Cease Elec. Inc.*, 688 N.W.2d 462, 466 (Wis. 2004). Thus, the doctrine "bars recovery in tort for economic losses sustained from a contractual dispute." *Taizhou Yuanda Inv. Grp. Co. v. Z Outdoor Living, LLC*, 44 F.4th 629, 632 (7th Cir. 2022) (citing *Kaloti*, 699 N.W.2d at 216). But Wisconsin law does not extend the economic loss doctrine to services contracts. *Cease Elec.*, 688 N.W.2d at 472. And while its application to employment contracts is unsettled, the Wisconsin Court of Appeals recently declined to extend the doctrine to employment law. *Reetz v. Advoc. Aurora Health, Inc.*, 983 N.W.2d 669, 679 (Wis. Ct. App. 2022). These limitations on the doctrine make the Court reluctant to apply it here on a motion to dismiss.

Moreover, at least some of Plaintiffs' fraud claims against Walters do not relate to contracts between Plaintiffs and Walters. Plaintiffs assert fraud by Walters that led Plaintiffs to contract with TruWarranty and E4U. Walters is not a party to those contracts, and he offers no explanation why the economic loss doctrine would apply in this situation. At the motion to dismiss stage, it is sufficient to say that the economic loss doctrine does not clearly bar Plaintiffs' recovery against Walters for intentional misrepresentation.

Walters fares no better in challenging what he calls Plaintiffs' conclusory allegations that Walters falsely represented that TruWarranty offered the most competitive bid to partner with Plaintiffs. (ECF No. 74 at 17.) Plaintiffs sufficiently allege the circumstances concerning their contracting with TruWarranty, including Walters's involvement with the RFP process and negotiations with TruWarranty. They also allege that "Walters concealed his secret kickbacks from TruWarranty with the intent to deceive and induce Plaintiffs to work with TruWarranty." (ECF No. 12 ¶170; *see also id.* ¶¶168–69.) Given the totality of the allegations in the complaint, there is nothing improperly conclusory about these allegations. At this stage, Plaintiffs' allegations that Walters failed to disclose to his employer the commissions he was receiving from one of its customers is sufficient to give rise to a plausible fraud claim, assuming he had a duty to disclose. And, while Walters and Plaintiffs dispute whether and when Walters became a Kunes employee, (*see* ECF No. 74 at 19; ECF No. 83 at 11), Plaintiffs have plausibly alleged that Walters was Kunes' agent both as an employee and independent contractor. (*See* ECF No. 12 ¶46.) "Agents

act in a fiduciary capacity and are required to make full disclosure to their principals of all information material to a transaction." *Hercules v. Robedeaux, Inc.*, 329 N.W.2d 240, 242 (Wis. Ct. App. 1982) (citing *Degner v. Moncel*, 93 N.W.2d 857, 859 (Wis. 1959)). Plaintiffs' allegations are therefore sufficient to state a claim.

As explained above, whether Walters's alleged omissions were material is a factual issue for another day. Walters insists that the two-dollar payment he received from TruWarranty on each sale is neither relevant nor material to Plaintiffs' relationship with TruWarranty. (ECF No. 74 at 18.) But "[a] fact is material if a reasonable [contracting party] would attach importance to its existence or nonexistence in determining the choice of action in the transaction in question." *Ollerman*, 288 N.W.2d at 107. Plaintiffs allege they would have rejected the deal with TruWarranty if apprised of these secret commissions. (ECF No. 12 ¶170.) It is certainly plausible that Plaintiffs would have been disinclined to contract with TruWarranty if they knew it was secretly paying "kickbacks" to the employee who negotiated with and recommended TruWarranty. At the motion to dismiss stage, that is sufficient to establish materiality and thus that Walters had a duty to disclose those commissions to Plaintiffs.

As to the allegations concerning kickbacks from E4U, Walters argues that Plaintiffs have failed to plead their claim with the particularity demanded by Rule 9(b). (ECF No. 74 at 18.) While Walters is correct that several of Plaintiffs' allegations are vague, the overall gist of this claim is adequately alleged. The Amended Complaint states with particularity that, on or around January 12, 2022, Walters "told Scott Kunes and David Hayes that he was not receiving a commission from E4U." (ECF No. 12 ¶156(e).) Plaintiffs also allege that Walters failed to disclose those commissions throughout his employment. Accordingly, Plaintiffs have stated a claim for intentional misrepresentation against Walters based both on his failure to disclose commissions from TruWarranty and his affirmative misrepresentation and failure to disclose commissions from E4U.

## B. Plaintiffs' Lanham Act Claims Are Insufficiently Pleaded Under Rule 9 and as a Matter of Law.

In Counts Sixteen and Seventeen of the Amended Complaint, Plaintiffs try to squeeze their disagreements with Defendants into Lanham Act claims, alleging both false advertising and false designation of origin violations under 15 U.S.C. § 1125(a). As to both counts, Defendants invoke Rule 9(b) and complain that Plaintiffs impermissibly treat Defendants as a "monolith" without alleging specific violations by each Defendant. (ECF No. 48 at 34–38; ECF No. 74 at 29–32.)

With respect to the false advertising claim, Defendants also argue Plaintiffs have not alleged the existence of a "commercial advertisement," a required element of such a claim. (ECF No. 48 at 36–37; ECF No. 74 at 30–31.) With respect to the false designation of origin claim, Defendants argue that Plaintiffs have not alleged a specific action by any of the defendants that would violate the statute. (ECF No. 48 at 38; ECF No. 74 at 32.) For the reasons below, the Court agrees that Plaintiffs' allegations are insufficient to state claims under the Lanham Act against any of the defendants.

As an initial matter, the parties dispute whether Rule 9(b) applies to Lanham Act claims. Plaintiffs do not help themselves (or the Court) by offering inconsistent positions on the issue. In opposing TruWarranty's motion, Plaintiffs concede that Rule 9(b) applies to Lanham Act claims. (*See* ECF No. 61 at 42–43.) But in responding to the Walters Defendants' motion, Plaintiffs insist that Rule 9(b) does *not* apply. (ECF No. 83 at 25–26, 28.) Regardless, Seventh Circuit law confirms that Rule 9(b) applies to these claims. Plaintiffs' argument to the contrary is based on *Priority International Animal Concepts, Inc. v. Bryk*, No. 12-C-0150, 2012 WL 6020044 (E.D. Wis. Dec. 3, 2012), but that case's holding has been overtaken by more recent and binding Seventh Circuit precedent. In *Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014), decided two years after *Priority International,* the Seventh Circuit affirmatively applied Rule 9(b) to a Lanham Act claim for false designation of origin. While *Gensler* did not address the application of Rule 9(b) to a Lanham Act false advertising claim, its logic would apply equally in this setting. Both of Plaintiffs' Lanham Act claims are premised on the same basic allegations of fraudulent behavior. Moreover, applying heightened pleading requirements to Plaintiffs' Lanham Act claims is consistent with the Seventh Circuit's teaching that a claim that "sounds in fraud" is subject to Rule 9(b). *See Borsellino*, 477 F.3d at 507. Accordingly, the Court will apply Rule 9(b)'s heightened pleading standard to both of Plaintiffs' Lanham Act claims.

### 1. Plaintiffs' False Advertising Claims Fail for Lack of Particularity Under Rule 9(b) and for Failure to Allege a Commercial Advertisement or Promotion.

Plaintiffs also try to fit their gripes against Defendants into a Lanham Act false advertising claim. Plaintiffs generally allege that Defendants made false or misleading statements of fact about Plaintiffs' products or services in commercial advertisements to several of Plaintiffs' clients and prospective clients. (ECF No. 12 ¶300.) Defendants are correct that this allegation is insufficient to state a claim for at least two reasons.

First, this general and conclusory allegation fails to satisfy Rule 9(b). Plaintiffs' false advertising allegations do not even attempt to differentiate or treat with particularity any of the six defendants. (*Id.* ¶¶300–04.) More specifically, Plaintiffs do not allege "*who* was deceived, much less *what* deceived them, *when* they were deceived, or *how* the alleged deception was communicated" as to any or all of the defendants. (ECF No. 48 at 35.) Indeed, with respect to two of the defendants sued (CRT and Everly), Plaintiffs do not allege that either made *any* false statement. As for the remaining four defendants, the allegations lack the specificity Rule 9(b) demands. Under established Seventh Circuit law, this sloppy, undifferentiated pleading approach warrants dismissal. *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (concluding that Rule 9(b)'s particularity requirement was not satisfied because "the complaint lumps all the defendants together and does not specify who was involved in what activity").

Plaintiffs cannot overcome this pleading failure with even more generalities. In their response briefing, Plaintiffs try to answer the who, what, where questions underlying their false advertising claim with the following unhelpful assertions: "who (TruWarranty and its agents); the what (commercial statements from TruWarranty and its agents); the when (starting shortly after Walters and his associates resigned from IDS in August 2022); the where (Plaintiffs' clients and prospective clients); and the how (through literally false commercial statements and representations)." (ECF No. 61 at 42–43 (citing ECF No. 12 ¶¶145–54, 296–304).) A general reference to all of "Plaintiffs' clients and prospective clients" is not the specificity Rule 9(b) requires. Nor can Plaintiffs generically point to "false commercial statements and representation." These conclusory assertions lack the specificity required by Rule 9(b) and simply underscore the inadequacy of Plaintiffs' pleading.

Plaintiffs try to excuse their pleading failure with the assertion that "Rule 9(b)'s particularity standard requires flexibility when information outside of the plaintiff's control," (*Id.* at 43 (quoting *Evolve Biosystems, Inc. v. Abbot Labs.*, No. 19-C-5859, 2022 WL 846900, at *4 (N.D. Ill. Mar. 22, 2022) (alterations and internal quotation marks omitted).) This principle does not help Plaintiffs here. "The purpose . . . of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. N.W. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Contrary to Plaintiffs' suggestion, the deficiency in their pleading is not that they do not know the "exact times and dates of [Defendants'] sales pitches to Plaintiffs' clients and prospective clients." (*See* ECF No. 61 at

43.)  Rather, Plaintiffs have failed to plead any specifics about the particular fraud they contend was perpetrated.  Despite alleging that Walters, Hwang, and Barkes made false statements to Plaintiffs' own clients, Plaintiffs have not alleged what particular false statements were made, to whom, when they were made, or how they were communicated to any specific client or prospective client.  Plaintiffs certainly know their own customers.  This is not information that was known only to Defendants or that is undiscoverable prior to discovery.  This is the type of investigation that Rule 9(b) required Plaintiffs to perform *before* filing suit.

Defendants are also correct that Plaintiffs' Lanham Act false advertising claim fails because Plaintiffs have not pleaded any false statement of fact by Defendants in "commercial advertising."  To state a Lanham Act claim for false advertising, Plaintiffs must allege: (1) a material false statement of fact in a commercial advertisement or promotion; (2) that actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) that has injured or is likely to cause injury to Plaintiffs. *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381–82 (7th Cir. 2018); *see also* 15 U.S.C. § 1125(a)(1)(B).  While the Lanham Act does not define commercial advertising or promotion, Seventh Circuit caselaw establishes some parameters.  On one end, both "promotional material disseminated to anonymous recipients" and "an advertisement read by millions (or even thousands in a trade magazine)" fall squarely within the ambit of a false advertising claim.  *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 521 (7th Cir. 2012) (quoting *First Health Grp. Corp. v. BCE Emergis Corp*, 269 F.3d 800, 803–04 (7th Cir. 2001)).  On the other end, a small number of allegedly false statements made in person-to-person communications at trade shows are not commercial advertising or promotion.  *Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 624 (7th Cir. 2005).  Neither are a handful of misleading letters sent to a plaintiff's clients.  *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003).  While commercial advertising or promotion does not always need to be aimed at the general public, it does require a "systematic communicative endeavor to persuade possible customers."  *Neuros*, 698 F.3d at 522.

As TruWarranty notes, Plaintiffs have alleged, at most, "isolated instances of statements or conduct that reached a limited number of clients and potential clients."  (ECF No. 48 at 37.)  Plaintiffs do not overcome this failure by focusing on the harm that Defendants alleged false statements caused them.  While Plaintiffs contend that the "entire universe of potential customers seeking F&I Products marketing services is very limited" and, thus, a false statement to *any one*

of Plaintiffs' customers or potential customers is harmful, (ECF No. 61 at 44), this misses the legal point. Plaintiffs can only invoke the Lanham Act if the false statements were made in a commercial advertisement or promotion. By Plaintiffs' own admission, "the first step is to assess the alleged nature and size of the particular industry in which the advertising or promotion occurred." (*Id.* (citing *Neuros*, 698 F.3d at 522); *see also* ECF No. 83 at 26.) But the only information about the size of the relevant industry Plaintiffs have pleaded is that it is "limited" and there is a "finite list of clients and prospective clients" for Plaintiffs' F&I Products marketing services. (*See* ECF No. 12 ¶299.) Once again, Plaintiffs have provided only generalized allegations that provide no particularized information that would support a conclusion that false statements were made in commercial advertising or promotional materials.

In the end, Plaintiffs' allegations are similar to those the Seventh Circuit concluded did not rise to the level of commercial advertising or promotion in *Sanderson* and *ISI International*. Plaintiffs allege that Walters, Hwang, and/or Barkes individually contacted or visited three or more[7] of Plaintiffs' clients or perspective clients and made representations that were "plainly false and intended to mislead." (ECF No. 12 ¶149.) In other words, Plaintiffs allege that Walters, Hwang, and/or Barkes had a small number of one-to-one interactions with Plaintiffs' customers or potential customers in which they allegedly made false statements. As a matter of law, these limited one-to-one interactions cannot rise to the level of a "systematic communicative endeavor" required by the Lanham Act. *See Neuros*, 698 F.3d at 522.

When asked at oral argument to direct the Court to the Seventh Circuit case most beneficial to their Lanham Act claims, Plaintiffs' counsel cited *Neuros*. In *Neuros*, the defendant allegedly made false statements in PowerPoint presentations to a number of engineering firms that advise waste-water treatment plants on which turbo blowers to buy (the plaintiff's product). *Id.* at 518. Additionally, the defendant published these false statements on its website and sent them to sales representatives it used to market its own blowers. *Id.* In reversing the district court's conclusion that the defendant did not engage in commercial advertising or promotion, the Seventh Circuit took notice of the fact that the defendant "visited most of the engineering companies" that made up the relevant market and repeated its allegedly false statements to each, in addition to publishing

---

[7] At its most particularized, the Amended Complaint alleges that "Walters, Hwang, and/or Barkes, acting as TruWarranty's agents," contacted or visited Morgan Auto Group, Laura Auto Group, Sandy Sansing, and potentially more of IDS's clients and prospective clients. (ECF No. 12 ¶149.)

the statements on its website. *Id.* at 522. Plaintiffs have not alleged any such systemic communicative endeavor by Defendants. They have merely alleged, in general terms, that Walters, Hwang, and/or Barkes contacted a small number of Plaintiffs' clients or prospective clients and allegedly made (again, in general terms) false statements in that one-to-one setting. That is not sufficient to state a claim for false advertising under the Lanham Act, even accepting Plaintiffs' allegations as true at the pleading stage.

### 2. Plaintiffs Also Fail to State Claims for False Designation of Origin Under the Lanham Act.

Plaintiffs' false designation of origin claims are based on allegations that Walters, Hwang, and/or Barkes ("acting as TruWarranty's agents") visited several IDS clients and prospective clients and attempted to convince them to "sign new contracts with CRT and/or TruWarranty to continue to write F&I Products that are contracted with and available to such clients through IDS." (ECF No. 12 ¶149.) Defendants offer similar arguments for dismissal. Defendants again invoke Rule 9(b) and complain that Plaintiffs have not pleaded this claim with particularity. (ECF No. 48 at 38; ECF No. 74 at 31–32.) TruWarranty additionally points out that none of Plaintiffs' false designation of origin allegations say anything about any actions by TruWarranty. (ECF No. 48 at 38.) The Walters Defendants similarly argue that the actions Plaintiffs allege that Walters, Hwang and/or Barkes took, even if true, do not support a "passing off" claim under the Lanham Act. (ECF No. 74 at 32; ECF No. 86 at 18–19.) The Court agrees that Plaintiffs have not alleged conduct sufficient to state a claim for false designation of origin against any of the defendants.

Plaintiffs' false designation of origin claims suffer from the same lack of particularization as their false advertising claims. Plaintiffs again make no individualized allegations and refer repeatedly to "Defendants" as a monolith. (*See* ECF No. 12 ¶¶306–10.) In their briefing, Plaintiffs attempt to cure this deficiency by directing the Court to other portions of the complaint. (ECF No. 61 at 45 (citing ECF No. 12 ¶¶145–54).) But these allegations likewise suffer from a lack of specificity.

Ultimately, the greater flaw is that Plaintiffs' allegations do not state a claim for false designation of origin. A claim for false designation of origin under 15 U.S.C. § 1125(a) requires Plaintiffs to allege and prove that Defendants: (1) used a false designation of origin or false description or representation in connection goods or services; (2) that those goods or services entered interstate commerce; and (3) that Plaintiffs are likely to be damaged as a result of the misrepresentation. *See Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690, 695–96 (7th Cir.

1999). Plaintiffs insist they have alleged a "classic 'passing off' claim, [where] a defendant 'misrepresents his own goods or services as someone else's.'" (ECF No. 83 at 27 (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2023)); ECF No. 61 at 45.) But, other than their conclusory allegations aimed at all "Defendants," (*see* ECF No. 12 ¶307), Plaintiffs have not alleged that any defendant misrepresented that defendant's own goods or services as Plaintiffs'.

Plaintiffs admit they were not vendors of the F&I products at issue; rather they provided "F&I Products marketing services" by offering products of other vendors (including TruWarranty and E4U). (*Id.* ¶27.) The operative question, then, is whether Plaintiffs have sufficiently alleged that one or more Defendants passed off Plaintiffs' services as their own. Plaintiffs allege that Walters, Hwang, and/or Barkes visited several IDS clients and prospective clients and attempted to convince them to "sign new contracts with CRT and/or TruWarranty to continue to write F&I Products that are contracted with and available to such clients through IDS." (ECF No. 12 ¶149.) In other words, Plaintiffs allege that Defendants tried to convince Plaintiffs' clients to contract with TruWarranty or CRT rather than Plaintiffs. Plaintiffs have not alleged that any Defendants misrepresented that the products or services that these clients or prospective clients were purchasing were Plaintiffs' products or services. While "misleading IDS clients into believing they need to sign new contracts with CRT and/or TruWarranty" may be actionable under other bodies of law, it is not sufficient to state a false designation of origin claim under the Lanham Act. *See Dastar*, 539 U.S. at 29 ("[15 U.S.C. § 1125(a)] does not have boundless application as a remedy for unfair trade practices.") (internal quotation marks omitted). This claim will also be dismissed.

### C. Plaintiffs' Federal RICO Claims Fail as a Matter of Law.

In Count Nineteen, Plaintiffs allege that TruWarranty, CRT, E4U, Walters, Hwang, and Barkes violated the federal RICO statute, 18 U.S.C. § 1962(c), by conducting an enterprise through a pattern of racketeering activity and are thus liable to Plaintiffs for treble damages. (ECF No. 12 ¶¶316–44.) In Count Twenty, Plaintiffs allege these same five defendants are liable for conducting a RICO conspiracy in violation of 18 U.S.C. § 1962(d). (*Id.* ¶¶345–54.) Defendants seek dismissal of both claims, contending that the facts alleged in the Amended Complaint do not plausibly support the existence of either (1) an "enterprise" or (2) a "pattern" of racketeering activity, both of which are required elements for civil RICO liability. Defendants further argue that because

Plaintiffs' allegations fail to support an underlying RICO claim, Plaintiffs' RICO conspiracy claim under 18 U.S.C. § 1962(d) likewise fails. (ECF No. 48 at 19; ECF No. 74 at 41–42.) The Court agrees. The allegations in the Amended Complaint describe at most a failed business endeavor and potential breaches of both contract and fiduciary duties by Plaintiffs' former employees and business partners, not criminal racketeering. Because Plaintiffs have not plausibly alleged a RICO violation, Counts Nineteen and Twenty will be dismissed.

### 1. Plaintiffs Have Not Stated a Viable RICO Claim.

Congress enacted the RICO statute, and provided a civil remedy for private plaintiffs, to combat long-term criminal activity, including organized crime. *Menzies v. Seyfarth Shaw*, 943 F.3d 328, 336 (7th Cir. 2019). To state a civil RICO claim, a plaintiff must plausibly allege facts showing that defendants "(1) conduct[ed] (2) [] an enterprise (3) through a pattern (4) of racketeering activity." *Sabrina Roppo v. Travelers Com. Ins.,* 869 F.3d 568, 588 (7th Cir. 2017) (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)). Proof of these elements in an appropriate case entitles plaintiffs to significant remedies, including treble damages and attorneys' fees. 18 U.S.C. § 1954(c).

Since its enactment, courts, including the Seventh Circuit, have repeatedly stressed the limited availability of civil RICO liability and confirmed that RICO does transform "garden-variety" state-court business disputes involving allegations of fraud into federal lawsuits for treble damages. *See Menzies,* 943 F.3d at 337 (citing *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992); *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 522 (7th Cir. 1995) ("The murkiness of RICO's parameters coupled with its alluring remedies have led many plaintiffs to take garden variety business disputes and dress them up as elaborate racketeering schemes."). To "forestall" misapplications of RICO, the Seventh Circuit has identified a number of pleading and proof requirements designed to separate the wheat of real racketeering claims involving long-term criminal activity from the chaff of ordinary business lawsuits. *See Menzies,* 943 F.3d at 337. Defendants invoke these requirements and contend that the Amended Complaint fails to plausibly allege a civil RICO claim. The Court will focus on two of Plaintiffs' pleading failures, both of which are independently sufficient to warrant dismissal.

### a. The Amended Complaint Does Not Allege a Plausible RICO Enterprise.

Defendants insist Plaintiffs have not adequately alleged facts sufficient to find that they conducted an "enterprise." (ECF No. 48 at 20–24; ECF No. 74 at 33–36.) Under the statute, an

enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has confirmed that while this definition is intentionally broad, the statute requires a showing of at least some "minimal structure" that includes at least three features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). A plaintiff must also allege and prove that defendants *used* such an enterprise to engage in a pattern of racketeering activity. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 389 (7th Cir. 2010). Courts have further confirmed that the enterprise must be separate from the defendant itself. *See Bible v. United StudentAid Funds, Inc.*, 799 F.3d 633, 655 (7th Cir. 2015) ("[T]he definition does require that the defendant be a "person" that is distinct from the RICO enterprise.") (citing *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853–54 (7th Cir. 2013)). And RICO also requires a showing that the defendants conducted or participated in the enterprise's affairs, not just their own affairs. *See Chrichton v. Golden Rule Ins.*, 576 F.3d 392, 399 (7th Cir. 2009) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).

Plaintiffs have failed to offer a coherent theory of long-term criminal racketeering activity conducted through an enterprise. Indeed, Plaintiffs' enterprise allegations are conclusory, confusing, inconsistent and, ultimately, implausible. Plaintiffs inexplicably allege, in the alternative, that either TruWarranty, CRT, or E4U is the RICO "enterprise." (ECF No. 12 at 76.) They first target TruWarranty as the enterprise, claiming that "CRT, E4U, Walters, Hwang, and Barkes, including their respective employees and agents, used TruWarranty as an enterprise through which they conducted their fraudulent activities and thefts." (*Id*. ¶320.) This conclusory assertion is not supported by any factual allegations that would allow a plausible inference that all of these defendants conducted criminal activity through TruWarranty. In fact, such a conclusion runs contrary to other more specific allegations. Plaintiffs allege that TruWarranty was a provider of F&I products and services to, among others, Plaintiffs themselves. (ECF No. 12 ¶95.) Nor do Plaintiffs describe the alleged predicate criminal activities, including unlawful kickbacks, fraud, and theft of trade secrets, as having been conducted through TruWarranty.

Moreover, as a RICO defendant, TruWarranty itself cannot have conducted a criminal enterprise through itself; a defendant must be distinct from the enterprise. *See Bible*, 799 F.3d at

655 (citing *United Food*, 719 F.3d at 853–54). Perhaps recognizing this problem, Plaintiffs allege that perhaps CRT is actually the enterprise: "*Alternatively*, TruWarranty, E4U, Walters, Hwang, and Barkes, including their respective employees and agents, used CRT as a vehicle to carry out their fraudulent activities and thefts." (*Id*. ¶321) (emphasis added). This allegation is identical to the prior allegation except that CRT replaces TruWarranty, and it is equally conclusory and unsupported by factual allegations plausibly suggesting that the defendants took any concerted action through CRT as a criminal enterprise. Leaving nothing to chance, Plaintiffs repeat this conclusory allegation a third time, tagging E4U as another alternative enterprise. (*Id*. ¶325.) This allegation is also entirely unsupported. Nowhere do Plaintiffs reconcile these inconsistent allegations or explain in less than conclusory terms a coherent plausible enterprise structure that would support a finding of long-term racketeering activity. Plaintiffs have not alleged how any of the other defendants participated in the operation or management of TruWarranty. Nor have they plausibly alleged how, under their alternate theories, the other defendants participated in the operation or management of CRT or E4U. Instead, they simply throw these three varied theories at the wall, along with an unhelpful reference to the entirety of the other allegations in their overlong and unwieldy Amended Complaint. "Spray and pray" is not an acceptable strategy for pleading a RICO claim in federal court. Plaintiffs' conclusory and implausible allegations of a RICO "enterprise" are insufficient to state a claim. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

Plaintiffs do not eliminate the ambiguity by also offering a fourth potential alternative enterprise: that TruWarranty, CRT, E4U, Walters, Hwang, and Barkes formed an informal "association-in-fact" enterprise. (*Id*. ¶325.) Like its predecessors, this theory is alleged in mere conclusory fashion, without a coherent and plausible set of supporting factual allegations. Plaintiffs allege no purpose of any such "association in fact" other than that each defendant engaged in some of the predicate acts cited in the Amended Complaint. This does not suffice. The group must act as an enterprise with a purpose separate from the predicate acts themselves. *See Chrichton*, 576 F.3d at 399. Plaintiffs' failure to offer a plausible enterprise requires dismissal of their civil RICO claim.

> **b. The Amended Complaint Also Does Not Allege a Pattern of Racketeering Activity.**

Defendants are also correct in arguing that Plaintiffs have not adequately alleged a "pattern" of racketeering activity sufficient to support RICO liability. (ECF No. 48 at 24–28; ECF

No. 74 at 36–38.) To satisfy this element, a plaintiff must allege and prove at least two predicate acts that satisfy what has come to be called the "continuity plus relationship" test. *See Midwest Grinding*, 976 F.2d at 1022. This test screens out ordinary fraud disputes from the long-term organized criminal racketeering activity targeted by RICO. *Id*. Accordingly, the test requires that the alleged predicate acts be related to one another and that they pose a threat of continued criminal activity. *Id*. Defendants argue that Plaintiffs have failed to allege sufficient predicate acts and cannot satisfy the continuity portion of the continuity-plus-relationship test. (ECF No. 48 at 16–25; ECF No. 74 at 28–33.) Leaving the adequacy of the predicate act allegations to one side, the Court agrees that the Amended Complaint does not allege the type of long-term continuous criminal misconduct sufficient to trigger RICO liability.

The Seventh Circuit has identified two ways of satisfying the continuity portion of the continuity-plus-relationship test. A RICO plaintiff must plead facts sufficient to establish either (1) "a closed-ended conspiracy that existed for such an extended period of time that a threat of future harm is implicit" or (2) "an open-ended conspiracy that, while short-lived, shows clear signs of threatening to continue into the future." *Midwest Grinding*, 976 F.2d at 1023; *Menzies*, 943 F.3d at 337. Labels aside, at the motion to dismiss stage, the determinative issue is whether the plaintiff has "adequately alleged that the challenged conduct occurred and went on long enough and with enough of a relationship with itself to constitute a pattern." *Menzies*, 943 F.3d at 337.

Defendants insist that Plaintiffs' claimed predicate acts—the paying of secret kickbacks and theft of trade secrets—are only alleged to have started in late 2020 and to have ended in Autumn 2022, a short time period of less than two years that precludes any plausible finding of closed-ended continuity. (ECF No. 48 at 31–33; ECF No. 74 at 38–41.) Defendants further argue that Plaintiffs have not adequately alleged open-ended continuity because all of the predicate acts are in the past and pose no possibility of continuing. (ECF No. 48 at 30–31; ECF No. 74 at 38–41.)

A fundamental problem of Plaintiffs' RICO claim is that they have not proffered a plausible theory of long-term criminal activity by these defendants of the type that RICO is intended to combat. By Plaintiffs' own allegations, any predicate act of "fraud" committed by defendants related to the "secret kickbacks" ended when Walters, Barkes, and Hwang left Kunes and IDS. (*See* ECF No. 12 ¶338.) To the extent the theft of trade secrets constitutes an additional source of predicate acts, those thefts likewise ended at the same time. The entire episode, from the beginning

of Kunes's relationship with Walters in late 2020 through the explosive ending of their working together (and the alleged theft of trade secrets) in the Fall of 2022, lasted less than 24 months. The Amended Complaint thus describes a finite series of alleged misconduct, involving just two different predicate acts, causing two types of harm to just a single victim. The time period by itself is too short to show closed-ended continuity. *See Roger Whitmore's Auto. Srvs., Inc. v. Lake County*, 424 F.3d 659, 673 (7th Cir. 2005). And the nature of the alleged predicate acts do not plausibly suggest open-ended continuity given the termination of Plaintiffs' relationships with Defendants. *See Midwest Grinding*, 976 F.2d at 1023.

### 2. Plaintiffs Have Not Stated a RICO Conspiracy Claim.

Defendants are also correct that Plaintiffs' failure to plead a viable civil RICO claim likewise dooms their RICO conspiracy claim. (ECF No. 48 at 19; ECF No. 74 at 41–42.) Having failed to allege a plausible RICO enterprise or pattern of RICO activity, Plaintiffs' RICO conspiracy gambit also fails. Simply parroting the statutory elements of a claim in conclusory fashion and then alleging that defendants somehow conspired to violate the statute is insufficient to support such a claim. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 733 (7th Cir. 1998). In sum, despite pages and pages of allegations and accusations, the alleged misconduct that Plaintiffs allege simply cannot be forced into the wrapper of a RICO claim, whether as a substantive violation of the statute or a conspiracy to do so. The fundamental disconnect between Plaintiffs' substantive factual allegations and the requirements of the RICO statute is not cured by invoking a RICO conspiracy. *See id.* at 731–32; *United Food*, 719 F.3d at 856–57 ("Having failed to plead facts that would establish a violation of Section 1962(c), [Plaintiffs] cannot state a claim for conspiracy under Section 1962(d) based on those same facts."). This claim will be dismissed too.

## II. The Walters Defendants' Additional Challenges Are Largely Without Merit.

The Walters Defendants also challenge the sufficiency of ten additional claims. Specifically, they seek the dismissal of six of Plaintiffs' tort claims: unjust enrichment (Counts Five and Seven); conversion (Count Four); breach of fiduciary duty (Count Eight); aiding and abetting (Count Nine); and civil conspiracy (Count Eighteen). They also seek dismissal of three state law statutory claims: civil theft under Wis. Stat. §§ 943.20(1), 895.446 (Count Three); identity theft under Wis. Stat. §§ 943.203(2), 895.446 (Count Ten); and violation of Wisconsin's Trade Secrets Act, Wis. Stat. § 134.90 (Count Fourteen). (*See* ECF No. 74.) Finally, CRT seeks

dismissal of Plaintiffs' claim for breach of contract (Count Six). (*Id.* at 22–23.) While most of these challenges are lacking, some have merit. In particular, Plaintiffs' claims against Everly are largely lacking in plausible factual support. Accordingly, the Court will grant the Walters Defendants' motion to dismiss both of Plaintiffs' unjust enrichment claims, the aiding and abetting and civil conspiracy claims against Everly, the civil theft claims against CRT and Everly, and the trade secrets claim against Everly. The balance of the motion is denied.

### A. Several of Plaintiffs' Tort Claims Are Insufficiently Pleaded.

#### 1. Plaintiffs' Unjust Enrichment Claims Are Incompatible with Their Pleadings.

Plaintiffs assert two unjust enrichment claims. Count Five of the Amended Complaint alleges that Walters, CRT, and Everly were unjustly enriched when they retained commissions from TruWarranty and E4U in excess of the benefits that Walters was entitled to under his employment agreements with Plaintiffs. (ECF No. 12 ¶¶195–97.) Count Seven asserts that CRT was unjustly enriched when Plaintiffs onboarded CRT employees and provided service support to CRT's existing portfolio of customers. (*Id.* ¶¶205–11.) The Walters Defendants seek dismissal of both claims.

Under Wisconsin law, an unjust enrichment claim requires allegations and proof that: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." *Puttkammer v. Minth*, 266 N.W.2d 361, 363 (Wis. 1978) (collecting cases). It is a fundamental principle, however, that "[i]f the parties entered into a valid, enforceable contract, then unjust enrichment does not apply." *Mohns Inc. v. BMO Harris Bank Nat'l Assoc.*, 954 N.W.2d 339, 353 (Wis. 2021) (citing *Continental Cas. Co. v. Wis. Patients Comp. Fund.*, 473 N.W.2d 584 (Wis. Ct. App. 1991)).

Defendants argue that Plaintiffs' unjust enrichment claims fail because they are premised on contractual agreements. The Amended Complaint confirms this point. Plaintiffs allege both claims by reference to express contracts:

> By Plaintiffs offering, and Walters accepting, the First Payment Plan, Plaintiffs conferred upon Walters a substantial benefit. (ECF No. 12 ¶194.)

> Walters/CRT/Everly . . . accepted or retained the benefit of secret commissions from TruWarranty and/or E4U in excess of the

maximum benefits to which he was entitled under the First Payment Plan and the Second Payment Plan. (*Id.* ¶197.)

> By Plaintiffs offering, and CRT accepting, for Plaintiffs to transition all CRT staff onto Plaintiffs' payroll . . . and providing service support to CRT's existing portfolio in exchange for CRT paying Plaintiffs 23% of its monthly portfolio revenue and agreeing that any new clients would be signed up as IDS accounts, Plaintiffs conferred upon CRT a substantial benefit. (*Id.* ¶206.)

These allegations confirm that Plaintiffs' unjust enrichment claims are both predicated on the existence of express agreements between Plaintiffs and Walters/CRT. While Plaintiffs may plead unjust enrichment in the alternative, *see* Fed. R. Civ. P. 8(a)(3), they may not pursue unjust enrichment claims founded on contractual agreements. *See Mohns, Inc.*, 954 N.W.2d at 363. Thus, Plaintiffs' pleading is incompatible with their claims for unjust enrichment and both claims must be dismissed. *See U.S. ex rel. Roach Concrete, Inc. v. Veteran Pac., JV*, 787 F. Supp. 2d 851, 859 (E.D. Wis. 2011).[8]

### 2. Plaintiffs Adequately State a Claim for Conversion Against Walters, CRT, and Everly.

Count Four of the Amended Complaint asserts a claim for conversion against Walters, CRT, and Everly. Plaintiffs allege that these three defendants converted Plaintiffs' property by improperly accepting "secret commissions" from TruWarranty and E4U. (ECF No. 12 ¶189.) The elements of conversion under Wisconsin law are: "(1) intentional control or taking of property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the rights of the owner to possess the property." *H.A. Friend & Co. v. Prof. Stationery, Inc.*, 720 N.W.2d 96, 100 (Wis. Ct. App. 2006).

The Walters Defendants first argue that Plaintiffs fail to state a conversion claim because the Amended Complaint lacks specific allegations as to each of Walters, CRT, and Everly. (ECF No. 74 at 21.) This argument fails. Plaintiffs have alleged that they "have an absolute and unconditional right to the immediate possession of all secret commissions received by

---

[8] Plaintiffs' first unjust enrichment claim also fails because the benefit conferred on Walters (or CRT or Everly) by Plaintiffs is a different benefit from the benefit they claim it would be inequitable for Walters to retain. (*See* ECF No. 74 at 22 (citing ECF No. 12 ¶197).) Plaintiffs allege the benefit they conferred on Walters is the compensation called for in the First (and Second) Payment Plan: "By Plaintiffs offering, and Walters accepting, the First Payment Plan, Plaintiffs conferred upon Walters a substantial benefit." (ECF No. 12 ¶195.) But the benefit they claim it would be inequitable for Walters to retain is money from "secret commissions from TruWarranty and/or E4U." (*Id.* ¶197.) This is not a benefit conferred on Walters by Plaintiffs, but rather one conferred by TruWarranty and/or E4U. A claim for unjust enrichment does not allow Plaintiffs to recover a *different* benefit than the benefit they conferred on Walters.

Walters/CRT/Everly from TruWarranty and/or E4U." (ECF No. 12 ¶188.) Plaintiffs further allege that Walters, CRT, and Everly received and kept those commissions without Plaintiffs' consent. (*Id.* ¶¶189–92.) These allegations cover the essential elements of a conversion claim and Defendants do not cite any authority suggesting that a claim for conversion is subject to Rule 9(b) or otherwise requires greater specificity than that alleged here.

The Walters Defendants next argue that Plaintiffs' conversion claim fails because their claimed right to the money paid to Walters by TruWarranty and E4U "flies in the face of the alleged facts." (ECF No. 74 at 21.) This conclusory rhetoric is unhelpful. As noted above, Plaintiffs have alleged the factual elements of a conversion claim; whether they can prove those facts cannot be resolved on a motion to dismiss. The Walters Defendants also maintain that because Walters was an independent contractor, Plaintiffs cannot sustain a claim for conversion against him. (*Id.*) But they offer no legal support for this assertion. Moreover, Walters's employment status—whether employee or independent contractor—is apparently disputed; Plaintiffs assert that he was an employee for at least part of his tenure. And, regardless, both employees and independent contractors can unlawfully take property belonging to someone else without permission. The Walters Defendants' challenge to Plaintiffs' conversion claims is rejected.

### 3. Plaintiffs State Breach of Fiduciary Duty Claims Against Walters, Hwang, and Barkes.

Count Eight asserts a breach of fiduciary duty claim against Walters, Hwang, and Barkes. (ECF No. 12 ¶¶212–20.) The Walters Defendants offer only a partial attack on this claim, focused on Kunes. They do not dispute that IDS has sufficiently alleged breaches of fiduciary duty and the duty of loyalty but insist that Kunes cannot maintain this claim against them because they were never employed by Kunes and instead were employed by IDS. (ECF No. 74 at 24.) Plaintiffs respond by first pointing to allegations that Walters was indeed a Kunes employee. (ECF No. 83 at 11–12.) The Court is sympathetic to Defendants' frustration with Plaintiffs' failure to differentiate among the various entities, including Kunes and IDS. The Amended Complaint does not consistently distinguish between the two companies. But the purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of claims and the Walters Defendants do not dispute that Plaintiffs have alleged the necessary elements for breach of fiduciary duty claims against Walters, Hwang, and Barkes.

Moreover, rejecting one of the two plaintiffs' claims would serve little purpose. It would not materially limit the necessary discovery or otherwise simplify the case. If Defendants required more clarity, they had every opportunity to file a motion for a more definitive statement under Federal Rule of Civil Procedure (12)(e). But their complaints about the lack of clarity in the pleading is not a basis for dismissal under Rule 12(b)(6).

### 4. Plaintiffs State a Claim for Civil Conspiracy Against All Defendants, Save Everly.

Count Eighteen asserts a claim for civil conspiracy against all Defendants based on their alleged secret plan to "defraud[] Plaintiffs of clients and revenue, solicit[] Plaintiffs' clients and prospective clients . . . and misappropriate[] Plaintiffs' confidential and trade secret information." (ECF No. 12 ¶313.) There are three elements to a civil conspiracy claim under Wisconsin law: "(1) the formation and operation of a conspiracy; (2) a wrongful act or acts done pursuant to the conspiracy; and (3) damage resulting from the act or acts." *N. Highland Inc. v. Jefferson Mach. & Tool Inc.*, 898 N.W.2d 741, 747 (Wis. 2017) (citing *Onderdonk v. Lamb*, 255 N.W.2d 507 (Wis. 1977)).

The Walters Defendants contend that "these elements clearly sound in fraud" and thus Rule 9(b)'s heightened pleading standard applies. (ECF No. 74 at 28.) Defendants are partially correct. "[I]f both fraudulent and nonfraudulent conduct violating the same . . . common law doctrine is alleged, only the first allegation can be dismissed under Rule 9(b)." *Kennedy v. Benrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003) (collecting cases). Here, Plaintiffs have alleged a conspiracy consisting of both fraudulent and nonfraudulent acts. (*See* ECF No. 83 at 25 (citing ECF No. 12 ¶¶146, 313).) Plaintiffs' allegations that Defendants formed a conspiracy to misappropriate Plaintiffs' trade secrets and confidential information and use it to solicit Plaintiffs' clients are not predicated on fraudulent acts and thus not subject to Rule 9(b). This is therefore not a basis to dismiss this claim.

Citing *North Highland*, Defendants also argue that a civil conspiracy claim requires Plaintiffs to allege that each co-conspirator was aware of the actions of the others. (ECF No. 74 at 28.) Defendants' reliance on *North Highland* is misplaced. In that case, the Wisconsin Supreme Court dismissed a civil conspiracy claim at summary judgment because unrebutted deposition testimony established a lack of knowledge sufficient to establish the formation and operation of a conspiracy. *N. Highland*, 898 N.W.2d at 747–48. At the motion to dismiss stage, Plaintiffs are entitled to all reasonable inferences in their favor. And Plaintiffs allege multiple instances of

communication between Defendants sufficient for the Court to infer the formation and operation of a conspiracy. (*See* ECF No. 12 ¶¶134, 140, 146.)

The Walters Defendants are on solid ground, however, in attacking Plaintiffs' civil conspiracy claim against Everly. Nowhere in the Amended Complaint do Plaintiffs allege any facts implicating Everly in any conspiracy. While Plaintiffs' allegations are sufficient to infer a conspiracy between the other five remaining defendants, Everly is not mentioned in any of the operative allegations. Perhaps acknowledging their mistake, Plaintiffs' briefing on this point ignores Everly altogether. (*See* ECF No. 83 at 25.) Accordingly, the Court will dismiss the civil conspiracy claim against Everly only.

### 5. Plaintiffs Have Stated a Claim for Aiding and Abetting Against All Defendants Except Everly.

Count Nine alleges that TruWarranty, CRT, Hwang, and Barkes aided and abetted Walters's breaches of his fiduciary duties and misappropriation of Plaintiffs' confidential and trade secret information. (ECF No. 12 ¶¶222–23.) Plaintiffs further allege that CRT and Walters aided and abetted TruWarranty, Hwang, and Barkes in misappropriating Plaintiffs' information and Hwang and Barkes in breaching their fiduciary duties. (*Id.* ¶¶224–25.) Wisconsin law recognizes independent tort claims for aiding and abetting when a defendant (1) "undertakes conduct that . . . aids another in the commission of an unlawful act; and (2) consciously desires or intends that his [] conduct will yield such assistance." *Edwardson v. Am. Fam. Mut. Ins. Co.*, 589 N.W.2d 436, 440 (Wis. Ct. App. 1998) (citing *Winslow v. Brown*, 371 N.W.2d 417, 423 (Wis. Ct. App. 1985)).

TruWarranty has not challenged this claim. But the Walters Defendants argue this claim must be dismissed because "Plaintiffs need sufficient allegations to show conduct of each defendant that aided and abetted each of the other six defendants" and have failed to do so. (ECF No. 74 at 25.) This misstates the pleading rules. Rule 8 requires only a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), not the "venerable [sic] mountain of allegations" the Walters Defendants wish to insert as a new pleading standard. (*See* ECF No. 74 at 25.) Plaintiffs have plausibly pleaded that TruWarranty, Walters, CRT, Hwang, and Barks each undertook conduct intended to aid Walters, Barkes, Hwang, and/or TruWarranty in the commission of unlawful acts. That is sufficient to state a claim for aiding and abetting under Wisconsin law.

The Walters Defendants are correct, however, that Plaintiffs' allegations against Everly are insufficient. As with the civil conspiracy claim, Plaintiffs make no allegations in the Amended Complaint suggesting that Everly knowingly aided Walters or any other party in the commission

of an unlawful act. Accordingly, the Court will dismiss Plaintiffs' aiding and abetting claim as to only Everly.

**B. Defendants' Challenges to Plaintiffs' Wisconsin Statutory Claims Mostly Fail.**

The Walters Defendants also challenge three of Plaintiffs' claims brought under Wisconsin statutory law: Count Three for statutory civil theft; Count Ten for identity theft; and Count Fourteen for theft of trade secrets. The Court agrees that the Amended Complaint does not state civil theft claims against CRT or Everly and does not state a trade secret claim against Everly and those claims will be dismissed as to those parties. The balance of the Walters Defendants' motion to dismiss Plaintiffs' Wisconsin statutory claims will be denied.

**1. Plaintiffs Have Stated Civil Theft Claims Against Only Walters.**

In Count Three, Plaintiffs assert a claim for civil theft under Wis. Stat. §§ 943.20(1) and 895.446 against Walters, CRT, and Everly. This claim is predicated on these three defendants' retention of the alleged kickbacks Walters received from both TruWarranty and E4U. Plaintiffs allege that Walters, CRT, and Everly violated Wis. Stat. § 943.20(1)(*b*) when they "took possession of commission payments from TruWarranty and/or E4U rightly belonging to Plaintiffs" and kept them without Plaintiffs' knowledge or consent. (ECF No. 12 ¶184.) Plaintiffs also claim that Walters, CRT, and Everly violated Wis. Stat. § 943.20(1)(*d*) when they "intentionally deceived Plaintiffs by knowingly misrepresenting the terms of TruWarranty's bid for Plaintiffs' business" and then subsequently obtained kickbacks from TruWarranty. (*Id.* ¶185.)

Section 895.446 creates a civil cause of action for any person who suffers damage or loss as a result of an intentional violation of various theft-related criminal statutes. Under Section 943.20(1)(b), a person who, by virtue of his employment, holds funds for another cannot use, transfer, conceal, or retain money in a manner contrary to his or her authority and without the owner's consent, with intent to convert the funds. Section 943.20(1)(d) prohibits obtaining title to property of another by intentionally deceiving the property owner with a false representation.

The Walters Defendants seek dismissal of Plaintiffs' civil theft claim against CRT and Everly under Section 943.20(1)(b) because neither CRT nor Everly was ever an employee of Plaintiffs. (ECF No. 74 at 19.) They further argue that this claim fails as to Walters because he was never a Kunes employee, his alleged actions took place before he was an IDS employee, and Plaintiffs fail to allege that he "knew" he was using money without Plaintiffs' consent. (*Id.*) The Walters Defendants also argue that Plaintiffs' civil theft claim premised on Section 943.20(1)(d)

claim fails against CRT and Everly because Plaintiffs allege misrepresentations by Walters alone. (*Id.* at 20.) They challenge the claim against Walters on Rule 9(b) grounds. (*Id.*)

Plaintiffs' allegations cannot sustain civil theft claims against CRT or Everly. Plaintiffs allege that Walters was Plaintiffs' employee, not CRT or Everly. And it is Walters alone who Plaintiffs allege made misrepresentations concerning TruWarranty's bid. Plaintiffs' statutory theft claims against CRT and Everly will therefore be dismissed.

Plaintiffs' allegations are sufficient to state a claim against Walters, however. While Walters insists he was never an employee of Kunes, the Amended Complaint alleges otherwise and must be accepted as true for purposes of the present motion. And, as for Walters's knowledge, the Amended Complaint alleges multiple times that Walters "intentionally, used, transferred, concealed, and retained possession of . . . money . . . without Plaintiffs' consent." (ECF No. 12 ¶184.) More specific allegations of Walters's knowledge are not required at this stage. Walters's request for dismissal of the Section 943.20(1)(d) claim also fails. He argues for dismissal in purely general terms, insisting that "this theft by fraud claim virtually mirrors the intentional misrepresentation claim and fails for the same reasons." (ECF No. 74 at 20.) But as the Court explained, Plaintiffs have stated an intentional misrepresentation claim against Walters. Walters's attempt at dismissal of this claim is similarly rejected.

### 2. Plaintiffs Have Stated a Claim for Identity Theft Against Walters, Hwang, and Barkes.

Count Ten asserts that Walters, Hwang, and Barkes violated Wisconsin's identity theft statute, Wis. Stat. § 943.203(2), for which civil recovery is authorized under Wis. Stat. § 895.446. Plaintiffs allege that Walters, Hwang, and Barkes each logged onto Plaintiffs' computer system "after having decided and/or agreed to join CRT, and/or TruWarranty" without Plaintiffs' authorization or consent for the purpose of harming Plaintiffs' reputation and obtaining Plaintiffs' trade secrets and other confidential information. (ECF No. 12 ¶¶109–15, 235.)

Section 943.203(2) prohibits the intentional use of an entity's "identifying information or identification document" without consent and by representing that the user is the entity or acts with its authorization or consent for the purpose of obtaining a benefit or harming the reputation or property of the entity. "Identifying information" includes any means of account access that can be used to obtain money, goods, services, or anything else of value or benefit. § 943.203(1)(c)6.c.

The Walters Defendants argue that Plaintiffs have not alleged that Walters, Hwang, or Barkes used any "'entity' identifying information" and thus they have not stated a claim under

Section 943.203(2). (ECF No. 74 at 26.) But Plaintiffs allege that Walters, Hwang, and Barkes used their login information to gain access to Plaintiffs' computer system and obtain valuable information without Plaintiffs' consent. This allegation is sufficient to satisfy the statutory requirements for a violation.

The Walters Defendants also seek dismissal of this claim by contending that Plaintiffs have failed to allege which "entity"—Kunes or IDS—"is implicated by these alleged acts." (*Id.*) This argument improperly seeks to add a pleading requirement not imposed by the statute or the Federal Rules. Plaintiffs allege that Walters, Hwang, and Barkes used their login information to gain access to "Plaintiffs' computer system." (ECF No. 12 ¶235.) Indeed, one could reasonably infer from this allegation that Kunes and IDS actually share a computer system. Given the procedural posture, the allegations and associated inferences are sufficient to defeat the Walters Defendants' motion to dismiss.

### 3. Plaintiffs Have Stated a Wisconsin Trade Secrets Claim Against All Defendants but Everly.

In Counts Thirteen and Fourteen, Plaintiffs allege violations by Walters, Hwang, Barkes, CRT, and TruWarranty of both the federal Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1836, *et seq.*, and Wisconsin's version of the Uniform Trade Secrets Act, Wis. Stat. § 134.90.[9] TruWarranty does not seek to dismiss either claim. The Walters Defendants seek dismissal of only the latter, arguing that Wisconsin's law defines trade secrets more narrowly than the DTSA. (ECF No. 74 at 26–27.) This argument will also be rejected.

Section 134.90 defines a "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique or process" that derives independent economic value from being not generally known and not readily ascertainable and that is subject to reasonable efforts to maintain its secrecy. Wis. Stat. § 134.90(1)(c); *IDX Sys. Corp. v. Epic Sys. Corp*, 285 F.3d 581, 583 (7th Cir. 2002). Plaintiffs allege that Defendants misappropriated a long list of proprietary information relating to Plaintiffs' clients. (ECF No. 12 ¶270.) They allege the information derives independent economic value from not being generally known and is not readily ascertainable. (*Id.* ¶271.) And Plaintiffs allege that they took multiple affirmative steps to protect the confidentiality of the information. (*Id.* ¶272.)

---

[9] Plaintiffs also allege that Everly violated Wis. Stat. § 134.90, but without providing any allegations to support that claim. Plaintiffs' briefing suggests they have abandoned their claim against Everly, so the Court will dismiss that claim. (*See* ECF No. 83 at 24 (arguing that all Defendants *but* Everly misappropriated trade secrets).)

Defendants make no specific attempt to establish that Plaintiffs' allegations are insufficient under Section 134.90. Instead, they argue that Plaintiffs do not differentiate between Kunes's trade secrets and IDS's secrets and that "Plaintiffs make no effort to conform their allegations to the claim being made and instead simply regurgitate a prior claim." (ECF No. 74 at 27.) These arguments are without merit. The DTSA and Section 134.90 use different language to define trade secrets, *compare* 18 U.S.C. § 1839(3) *with* Wis. Stat. § 134.90(1)(c), but does not mean that the same allegations cannot suffice to state a claim under both. *See e.g.*, *Kuryakyn Holdings v. Ciro, LLC*, 242 F. Supp. 3d 789, 797–98 (W.D. Wis. 2017) (analyzing both DTSA and Section 134.90 claims under Wisconsin standard). Plaintiffs have alleged that Defendants misappropriated valuable information that was not generally known or readily ascertainable that Plaintiffs took reasonable steps to protect. That is sufficient to state a claim under Section 134.90.

### C. CRT's Request for Dismissal of Plaintiffs' Breach of Contract Claim Fails.

Count Six of the Amended Complaint is a breach of contract claim against CRT. Plaintiffs allege they had a valid contract with CRT under which all CRT staff would transition onto Plaintiffs' payroll and Plaintiffs would provide service support to CRT's existing portfolio in exchange for 23% of CRT's monthly portfolio revenue. (ECF No. 12 ¶201.) Plaintiffs also allege that CRT breached this contract by failing to pay Plaintiffs the promised 23% of monthly revenue, causing damages of at least the amounts owed by CRT under the contract. (*Id.* ¶¶202–03.)

CRT focuses on minor discrepancies in Plaintiffs' pleading concerning whether the payment from CRT was due before or after Plaintiffs onboarded CRT's employees and paints the breach of contract claim as "inconsistent and incoherent." (ECF No. 74 at 23 (comparing ECF No. 12 ¶77 with ¶201).) CRT further argues that Plaintiffs fail to allege that they performed on the contract, and thus "CRT is not obliged to pay the 23% . . . and no breach has occurred." (*Id.*)

Defendants' arguments go well beyond the pleadings and intrude into factual matters inappropriate for resolution on a motion to dismiss. The Amended Complaint specifically alleges that Plaintiffs have performed on the contract by transitioning all CRT employees. (*See* ECF No. 12 ¶¶77, 201.) Issues as to the specifics of the parties' performance, including whether CRT was required to perform before or after Plaintiffs' performance, are irrelevant to the adequacy of Plaintiffs' pleading. Because the Court must accept Plaintiffs' factual allegations as true, CRT's motion must be denied.

## CONCLUSION

Plaintiffs' Amended Complaint is unnecessarily long, often confusing, and indicative of a "throw everything at the wall" approach to pleading. Nevertheless, they have alleged facts sufficient to survive the bulk of Defendants' challenges. The Court will dismiss several of Plaintiffs' asserted claims that are insufficiently pleaded or otherwise incompatible with their allegations, including Plaintiffs' Lanham Act, RICO, and unjust enrichment claims. Likewise, Plaintiffs' aiding and abetting, civil conspiracy, civil theft, and Wisconsin trade secrets claims against Everly are dismissed, as well as their civil theft claims against CRT. The motions are otherwise denied.

For these reasons,

**IT IS HEREBY ORDERED** that TruWarranty's Motion to Dismiss, ECF No. 47, is **GRANTED in part** and **DENIED in part**. The Lanham Act (Counts Sixteen and Seventeen) and RICO (Counts Nineteen and Twenty) claims against TruWarranty are **DISMISSED**.

**IT IS FURTHER ORDERED** that the Walters Defendants' Motion to Dismiss, ECF No. 74, is **GRANTED in part** and **DENIED in part**. The Lanham Act (Counts Sixteen and Seventeen) and RICO (Counts Nineteen and Twenty) claims against the Walters Defendants are **DISMISSED**, as are Plaintiffs' claims for unjust enrichment (Counts Five and Seven). The claims against Everly for aiding and abetting (Count Nine); civil conspiracy (Count Eighteen), civil theft (Count Three); and Wisconsin trade secret misappropriation (Count Fourteen) are also **DISMISSED**, as are Plaintiffs' civil theft claims (Count Three) against CRT.

Dated at Milwaukee, Wisconsin on May 10, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge