UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

Kunes Country Automotive Management,
Inc., *et al.*,

        Plaintiff,

     v.                              Civil Action No. 23-cv-1204-BHL

Spencer Walters, *et al.*,

        Defendants.

**DEFENDANT SIDECARS, INC., d/b/a TRUWARRANTY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH THIRD-PARTY SUBPOENAS TO PCMI CORPORATION, PCMI, LLC, UMB FINANCIAL CORPORATION, AT&T CORPORATION, AND EQUITY 4 U, INC. OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Bryan B. House
David Wenthold
Parker White
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee WI 53202
(414) 271-2400
Email: bhouse@foley.com
Email: dwenthold@foley.com
Email: pwhite@foley.com

*Attorneys for SideCars, Inc., d/b/a*
 *TruWarranty*

## INTRODUCTION

Pursuant to Rules 45 and 26 of the Federal Rules of Civil Procedure, Defendant SideCars, Inc., d/b/a TruWarranty ("TruWarranty") moves the Court to quash or, in the alternative, for a protective order with respect to Plaintiffs' third-party subpoenas issued to PCMI Corporation and PCMI LLC (together, the "PCMI Subpoena"), UMB Financial Corporation (the "UMB Subpoena"), AT&T Corporation (the "AT&T Subpoena"), and Equity 4 U, Inc. (the "Equity 4 U Subpoena") (collectively, the "Subpoenas").[1] The Subpoenas are an abuse of the discovery process and should be quashed (or a protective order should issue) for among other reasons: (1) the Subpoenas request documents to which the parties in the litigation have access and which should be obtained from those parties; (2) the Subpoenas are overbroad and unduly burdensome because they seek information that is neither relevant to the parties' claims or defenses nor proportional to the needs of the case; (3) the Subpoenas improperly seek confidential trade-secret and sensitive commercial information regarding how TruWarranty does business (and how other third parties that compete with Plaintiffs conduct their business). TruWarranty thus requests that the Court put a stop to Plaintiffs' abusive discovery tactics.

In the oral argument on Defendants' motions to dismiss, the Court said of the strategy employed in Plaintiffs' 86-page, 354-paragraph, 20-count Amended Complaint against seven defendants: "that's not how litigation is supposed to work." Feb. 2, 2024 Transcript at p. 90. In its May 10, 2024 Order on Defendants' Motions to Dismiss, the Court observed that the Amended Complaint employed "a 'throw everything against the wall' approach to pleading." Dkt. No. 89 at 32. The Court cautioned: "Going forward, the Court encourages the parties to focus discovery

---

[1] Plaintiffs Kunes Country Automotive Management, Inc. ("Kunes") and Ignition Dealer Services, Inc. ("IDS") are collectively referred to as Plaintiffs.

on the facts and claims actually implicated by Defendants' alleged misconduct." *Id.* at 2. Plaintiffs have failed to heed the Court's warning. Plaintiffs now employ the same "throw everything against the wall" approach to discovery. Indeed, Plaintiffs have served an initial set of overbroad and unduly burdensome discovery requests that contain nearly 100 requests to TruWarranty alone. Though TruWarranty anticipates that meet-and-confer conferences may be necessary to resolve discovery disputes regarding these requests (and those even-more-numerous requests directed at co-defendants), this motion is not about party discovery.

Rather, the urgent issue before the Court concerns Plaintiffs' attempt to end-run party discovery by serving duplicative and overbroad Subpoenas on third parties before the parties could respond to—much less confer regarding—party discovery. Just after serving the initial discovery requests, Plaintiffs served the Subpoenas seeking much of the same information that they could have requested—and, *in some cases*, *did request*—from TruWarranty. Perhaps recognizing that the parties would object to many of the requests on relevance and lack-of-proportionality grounds, Plaintiffs have subverted the regular litigation process and tried to tap third parties for this information.

Plaintiffs' service of the Subpoenas without first pursuing the documents from TruWarranty was not a mistake—this type of abuse is central to Plaintiffs' scorched-earth litigation strategy. They served subpoenas on TruWarranty's primary financial institution and its all-important software vendor to impugn TruWarranty's reputation and to damage its business relationships even further than Plaintiffs have to date. These abuses are particularly relevant now that Plaintiffs are competitors in the F&I Products business, and they acknowledge that IDS wants to be an F&I Products administrator—just like TruWarranty. Dkt. No. 12, Am. Compl., ¶ 24.

3

Indeed, much of the discovery Plaintiffs seek does not go to TruWarranty's conduct, but rather to their desire to compete and learn everything there is to know about TruWarranty's business—regardless of any connection to this case. Plaintiffs want to know how TruWarranty prices its products and how it builds its administrative fees—regardless of any connection to this case. They want to learn about TruWarranty's claims experience and reinsurance positions—regardless of any connection to this case. And they want to know how other entities in the business of marketing F&I Products make money and how much. None of these issues is relevant here.

Like some of Plaintiffs' ill-fated claims previously dismissed in this case, "[s]pray and pray is not an acceptable strategy" for discovery. *Cf.* Dkt. No. 89 at 20 (internal quotation marks omitted). Because the Subpoenas violate Rules 26 and 45, TruWarranty requests that the Court quash the Subpoenas or issue a protective order barring their enforcement.

## BACKGROUND

As the Court is aware, TruWarranty is a vendor of motor vehicle finance and insurance products ("F&I Products"), including, among other things, vehicle service contracts and guaranteed asset protection ("GAP") policies that help purchasers pay off loans in the event a totaled car is worth less than the outstanding loan amount, and other products protecting vehicle purchasers. Dkt. No. 12, Am. Compl., ¶ 24. Among other things, Plaintiffs allege that TruWarranty paid a secret commission to co-defendant Spencer Walters—Plaintiffs' one-time employee—and one of his entities on sales of F&I Products to Plaintiffs' customers. *Id.*, ¶¶ 166–173. Plaintiffs also allege that TruWarranty interfered with Plaintiffs' purported contractual and business relationships with certain auto dealers and finance companies. *Id.*, ¶¶ 238–251. Plaintiffs also allege that Defendants acquired Plaintiffs' trade secrets. *Id.*, ¶ 252–279.

4

Plaintiffs served their First Set of Written Interrogatories and Requests for Production to TruWarranty (the "Discovery Requests")—containing 15 Interrogatories and 82 Requests for Production—on May 31.[2]  *See* Declaration of Garen McMillian ("McMillian Decl."), Ex. A.  On or about June 4, Plaintiffs served similar discovery requests on co-defendants Spencer Walters, Consumer Retention Team, Everly Investments, Michael Barkes, and Christbell Hwang. McMillian Decl., ¶ 3.  The discovery requests to Mr. Walters include 20 Interrogatories and 101 Requests for Production.  *Id.  See* McMillian Decl., Ex. B.  In total, Plaintiffs served 364 Requests for Production on TruWarranty's co-defendants.  McMillian Decl., ¶ 3. Over the following two weeks and without waiting for any of the parties to respond to their expansive discovery requests, Plaintiffs served subpoenas on PCMI Corporation; PCMI, LLC; UMB Financial Corporation; AT&T Corporation; and Equity 4 U, Inc.  *See* McMillian Decl., Exhibits C–G.

**The PCMI and PCMI Subpoenas**

PCMI Corporation and PCMI, LLC (collectively, "PCMI") provide TruWarranty's integrated software solutions for finance and insurance products ("F&I Products") sales and administration.  McMillian Decl., ¶ 5.  PCMI is one of TruWarranty's most critical vendors.  *Id.* PCMI's administrative software platform, known as Policy Claim and Reporting Solutions ("PCRS"), allows users to track the full lifecycle of policy and claims administration.  *Id.*  PCMI and TruWarranty have access to the same PCRS database and can run the same reports.  *Id.,* ¶ 9.

---

[2] TruWarranty and Plaintiffs agreed that TruWarranty's written responses to the Discovery Requests would be due on July 12.

The PCMI Subpoena seeks "All PCRS reports"[3] identifying the following entities as "dealer, dealer group, agent, subagent, or reinsurance company":  Kunes, IDS, co-defendant Consumer Retention Team ("CRT"), co-defendant Everly Investments, Brennan and Dales Reinsurance Company, Laura Auto Group, Morgan Auto Group, and any "Chris Vitito Business." Brennan and Dales Reinsurance Company is a reinsurance company owned by Defendant Walters. McMillian Decl., ¶ 14.  Laura Auto Group is a group of auto dealers in Illinois and Missouri.  *Id.*, ¶ 15.  Morgan Auto Group is a group of auto dealers in Florida.  *Id.*, ¶ 16.  Chris Vitito is an individual in Florida who had a business relationship with TruWarranty and was involved in TruWarranty's relationship with Morgan Auto Group.  *Id.*, ¶ 20.  Today, like TruWarranty, Walters, Morgan Auto, and Chris Vitito are all competitors of Plaintiffs in the F&I Products industry. *Id.*, ¶¶ 19–21, 28.

Notably, each of the PCMI Subpoena's Requests for Documents (Nos. 1–8) is ***identical to Requests for Production Nos. 53–60 in Plaintiffs' Discovery Requests***.  McMillian Decl., Ex. A. These identical requests for production were also made to Spencer Walters at Requests for

---

[3] Specifically, the PCMI Subpoena seeks the following reports:

1. RPT210 – Remitted and Pending Contracts:  This report concerns the status of all remitted and pending F&I Products contracts;

2. RPT565 – Claim Paid Financial:  This report concerns payments made concerning claims made on F&I Products;

3. RPT602 – Payee Extracts:  This relates to the payment of commissions on sales of F&I Products as well as commission refunds owed in the event of cancellation of F&I Products contracts;

4. RPT631 – Earnings Experience:  This report is a report that tracks paid claims against earned reserves to arrive at a loss ratio;

5. RPT928 – Reinsurance Summary:  This report provides a reinsurance summary report concerning the underlying reserves and positions of the parties to the reinsurance contracts.

McMillian Decl., Ex. C, Requests Nos. 1–8.

Production Nos. 61–68. *Id.*, Ex. B. And these identical requests were made in the discovery requests to Everly Investments and Consumer Retention Team. McMillian Decl., ¶ 7.

When TruWarranty partnered with Plaintiffs to sell F&I Products, RPT210 and RPT655 were available to Plaintiffs; and those reports remain available to Plaintiffs today. *Id.*, ¶ 8. The other requested PCRS reports are reports that TruWarranty would have to run with its own access to PCRS. *Id.*, ¶ 9. PCRS reports, however, are not static records available for download, and they do not generate themselves. *Id.* A credentialed user must populate the different fields prior to running the report. *Id.*

RPT602 is the only report of these five reports sought that reflect commission or other fees paid on the sale of F&I Products. *Id.*, ¶ 11. The others relate to contracts, claims paid, loss ratios, and reinsurance positions. *Id.* And RPT602 contains a great deal of information regarding sales of TruWarranty F&I Products through dealers and partners unrelated to Plaintiffs. *Id.*, ¶ 12.

**UMB and the UMB Subpoena**

UMB Financial Corporation ("UMB") is TruWarranty's most important financial-institution partner. McMillian Decl., ¶ 22. UMB acts as trustee for trust accounts holding claim reserves for the benefit of certain insurance companies that are the beneficiaries of the trust accounts. *Id.*, ¶ 22–23. The premiums paid on the subject F&I Products are held in trust by UMB and those accounts establish the claim reserves. *Id.*, ¶ 23. Under a master custodial account there are more than 100 subaccounts, typically relating to dealers or other partners of TruWarranty that wish to participate in the risk concerning a particular portfolio of F&I Products. *Id.*

Under the master custodial account, Kunes is just one of many dealer groups that has subaccounts at UMB. *Id.*, ¶ 24. Seven Kunes-related entities have subaccounts at UMB that comprise 100% of the risk with respect to the subject portfolio of F&I Products (excluding GAP

policies). *Id.* Kunes has login credentials to access these accounts. *Id.* The trust accounts at UMB are not typical bank accounts or checking accounts as the UMB Subpoena suggests. *Id.*, ¶ 25. Commissions or other payments paid in connection with the sales of TruWarranty F&I Products were not deposited in these accounts. *Id.*

The UMB Subpoena seeks "[a]ll documents and communications relating to any and all accounts which were/are maintained by TruWarranty, either individually or jointly with another, from November 1, 2020, to September 1, 2023." McMillian Decl., Ex. E, Request No. 1. The UMB Subpoena seeks, for the same period, "all monthly bank statements for any account owned by TruWarranty," "all cession statements for any account owned by TruWarranty," and all "new account forms, documents reflecting investment objectives, account statements, questionnaires, or portfolio information" *Id.*, Request Nos. 2–4. The Subpoena also seeks "all communications," regarding the accounts of TruWarranty, including but not limited to phone logs and notes, as well as computer on-line access logs from November 1, 2020 to September 1, 2023. *Id.*, Request No. 5. The Subpoena then seeks the same information with respect to Spencer Walters' accounts and CRT accounts. *Id.*, Request Nos. 6–14.[4]

Like Kunes, Defendant Walters, through his company, Brennan and Dales Reinsurance Company, has subaccounts at UMB. McMillian Decl., ¶ 27. Brennan and Dales Reinsurance Company participated in the risk on the GAP policy portfolio when the Kunes-related entities declined to do so. *Id.*

---

[4] A "cession statement" is a periodic statement of subject premiums and the losses and expenses incurred under reinsurance policies. *See* https://www.irmi.com/term/insurance-definitions/cession-statement.

In addition to seeking "cession statements" from TruWarranty, Walters and CRT, the Subpoena also seeks "cession statements" for any account owned by Laura Auto Group, Morgan Auto Group, and any "Chris Vitito Business." *Id.*, Request Nos. 15–17. All of these entities are competitors of Kunes and/or IDS in the F&I Products business.

The requests to UMB for documents and communications relating to TruWarranty, Spencer Walters, and CRT are not limited to documents and communications concerning or relating in any way to Kunes or IDS. *Id.*, ¶ 28. TruWarranty, Walters, and CRT have business with UMB that is entirely unrelated to Kunes or IDS, and documents in UMB's possession relating to that business includes sensitive financial information. *Id.* The documents sought by the UMB Subpoena contain trade secrets and/or confidential commercial information. *Id.*, ¶ 29. Among other things, the documents sought would reveal bank accounts, portfolio information, and investment objectives, as well as names of TruWarranty's agents, customers, and other entities with which TruWarranty conducts business—information that Plaintiffs could use against TruWarranty's interests and in furtherance of their own. *Id.*

**The AT&T Subpoena**

The AT&T Subpoena seeks "ALL records and communications concerning any Communication" for nine phone numbers for the period November 1, 2020, to September 1, 2023. McMillian Decl., Ex. F. The request seeks all incoming and outgoing calls, the length of each call, text messages in any format, and the dates of the calls and texts—without regard to the identification of the counterparty or topic of the communication. *Id.* Two of these phone numbers belong to TruWarranty representatives. One is the business cellphone of National Account Manager Taylor Lansford; TruWarranty has collected data from that phone and will search for information responsive to Plaintiffs' Discovery Requests. McMillian Decl., ¶ 31. The other number is TruWarranty executive Ron Gardner's personal cellphone number. *Id.*, ¶ 32. In reviewing information regarding this matter, TruWarranty has learned that Mr. Gardner at times used this personal cellphone for TruWarranty business. *Id.*, ¶ 33. As a result, TruWarranty has

collected data from that phone and will search for information responsive to Plaintiffs' Discovery Requests. *Id.*

**The Equity 4 U Subpoena**

Non-party Equity 4 U is a business that seeks to restructure customers' payment plans, including with respect to auto loans. McMillian Decl., ¶ 35.[5] The Equity 4 U Subpoena seeks "documents," which is defined to include "communications": (1) between Equity 4 U and TruWarranty from November 1, 2020 to the present day; and (2) between Equity 4 U or its CEO Michael Hull and TruWarranty representatives Garen McMillian, Taylor Lansford, and Miranda Downs from November 1, 2020 to the present day. McMillian Decl., Ex. G. Plaintiffs' Discovery Requests to TruWarranty do *not* include these broad requests for communications between TruWarranty and Equity 4 U representatives. McMillian Decl., ¶ 37. Rather, the Discovery Requests seek documents regarding particular communications between Equity 4 U CEO Michael Hull and Mr. McMillian. McMillian Decl., Ex. A, RFP No. 75.

## ARGUMENT

Subpoenas are governed by the strictures of both Rule 45 and Rule 26. *See Colborn v. Netflix, Inc.*, 608 F. Supp. 3d 736, 740–41, 743 (E.D. Wis. 2022). Relevant here, Rule 45(d)(3)(A) provides that the Court "*must* quash or modify a subpoena that . . . subjects a person to undue burden." And the Court may quash a subpoena that requires the disclosures of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Rule 26's relevance and proportionality standards also restrict the scope of discovery sought via third-party subpoenas. *See Colborn*, 608 F. Supp. 3d at 740–41.

---

[5] Equity 4 U had been a defendant in the case but was dismissed on February 2, 2024. Dkt. No. 70.

After establishing that TruWarranty has standing to challenge the Subpoenas, TruWarranty will show that Plaintiffs must seek documents to which the parties have access from the parties first, the Subpoenas seek information neither relevant nor proportional to the needs of this case, and the Subpoenas improperly seek TruWarranty's trade-secret and confidential business information. For these reasons, the Subpoenas should be quashed or a protective order should be entered rendering them unenforceable.

## I.      The Issues are Properly Before the Court on TruWarranty's Motion.

### A.      TruWarranty has Standing to Move to Quash the Subpoenas.

A party has standing to quash or limit a third-party subpoena if the subpoena "infringes upon the movant's legitimate interests." *Architectural Iron Workers' Local No. 63 Welfare Fund v. Legna Installers Inc.*, No. 22 C 5757, 2023 WL 2974083, at*2 (N.D. Ill. Apr. 2023). And "requests for information that relate to [a movant's] business"—including requests for financial reports, banking records, phone records, and communications of TruWarranty and its agents/partners—"are sufficient to establish a legitimate interest, and thus standing." *Id.* (collecting cases). TruWarranty thus has standing to challenge the Subpoenas because each of them requests sensitive financial information, reports, or communications relating to its business activities.

### B.      TruWarranty Has Standing to Seek a Protective Order to Forbid Discovery Based on the Subpoenas.

TruWarranty also has standing to—and does—request a Rule 26 protective order forbidding enforcement of the Subpoenas. *See Antetokounmpo v. Maree, Inc.*, No. 23-cv-1389, 2024 WL 199141, at *2 (E.D. Wis. Jan. 18, 2024) (collecting cases).

11

### C. The Court has the Inherent Authority—and Obligation—to Quash Overbroad Subpoenas.

Further, the Court has an obligation under Rule 26(b)(2)(C) to limit the scope of discovery when appropriate. *See Fair Hous. Ctr. of Cent. Ind., Inc. v. Welton*, No. 18-cv-01098, 2019 WL 2422594, at *8 (S.D. Ind. June 10, 2019). This obligation means, among other things, that the Court has the inherent power to quash a subpoena under Rule 26. *See Hellen v. Am. Fam. Ins. Co.*, No. 22-cv-02717, 2024 WL 98383, at *3 & n.3 (D. Colo. Jan. 9, 2024) (collecting cases holding that courts have inherent authority under Rule 26 to manage discovery, which includes the power to quash subpoenas); *cf. Charvat v. Travel Servs.*, No. 12 CV 5746, 2015 WL 76901, at *2 (N.D. Ill. Jan. 5, 2015) (*sua sponte* exercising its "inherent power to protect persons subject to subpoena from undue burden" by quashing third-party subpoena). The Court also holds this authority under Rule 45. *See* Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2463.1 (3d ed.) ("Rule 45(d)(3)(A)(iv) expressly requires district judges to quash or modify a subpoena deemed to impose undue burden or expense on anyone subject to the subpoena."). If there were ever a situation that called for a court to exercise this inherent power, this is it.

### II. To The Extent that They Seek Relevant Documents to Which Defendants Have Access, Plaintiffs Should Seek—and, in Some Cases, Already Have Sought—Discovery from the Defendants.

First and foremost, the Subpoenas should be quashed because the information sought—to the extent relevant—can be obtained from the parties. As courts in the Seventh Circuit have held, "[e]ven if the subpoena's request is relevant, the court can quash it if there is an easier way for the requesting party to obtain the information"; a "party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same documents." *Acuity v. Kerstiens Home & Designs, Inc.*, No. 16-cv-02800, 2018 WL 3375015, at *2 (S.D. Ind. July 10, 2018); *accord Liberty Access Techs. Licensing LLC v.*

*dormakaba USA, Inc.*, No. 23-mc-00047, 2023 WL 7411436, at *1 (S.D. Ind. Nov. 9, 2023) (holding that parties must exhaust efforts to obtain discovery from the party opposite before turning to third-party subpoenas). This Court, too, has observed that courts are "not inclined to subject a nonparty to unduly burdensome discovery for information that is, for the most part, readily available from a party." *Oakeson v. Aero-Space Comput. Supplies, Inc.*, No. 22-cv-698, 2023 WL 372184, at *3 (E.D. Wis. Jan. 24, 2023).

Of course, Rule 26 also provides that discovery should not be unreasonably cumulative. *Tuszkiewicz v. Allen-Bradley Co., Inc.*, 172 F.R.D. 393, 394–95 (E.D. Wis. 1997) (Rule 26(b)(2) limits discovery when unreasonably cumulative or duplicative). To the extent that the Subpoenas seek relevant documents, the vast majority of those documents are available from parties to the litigation. Plaintiffs should be required to follow the process required under Rules 26 and 34 to pursue these documents from the parties.

**The PCMI Subpoena.** Plaintiffs' abuse of the discovery process is most pronounced with respect to the PCMI Subpoena. PCMI and TruWarranty have access to the same PCRS database and can run the same reports. McMillian Decl., ¶ 9. Plaintiffs know this. Indeed, the PCMI Subpoena is an *exact replica* of the Discovery Requests to TruWarranty—requests to which TruWarranty has not even provided an initial response. *Compare* Exhibit C*, PCMI Corp. Subpoena* at 6–9 *and* Exhibit D, *PCMI LLC Subpoena* at 6–9 *with* Exhibit A, *Plaintiffs' First Set of Discovery Requests to TruWarranty* at 25–28. Plaintiffs sent identical requests to co-defendants Walters, Everly Investments, LLC, and Consumer Retention Team. McMillian Decl., ¶ 7.

**The UMB Subpoena.** With respect to the UMB Subpoena, Plaintiffs' Discovery Requests already seek identification of, and documents relating to, "accounts," which they define to include "without limitation, bank accounts, investment accounts, reinsurance positions/captives/accounts,

and funds." *See* McMillian Decl., Ex. A, Interrogatories Nos. 9 and 11; RFP Nos. 29–30. The Discovery Requests also seek information regarding accounts reflecting reinsurance positions. *Id.* Thus, there is considerable overlap between the Discovery Requests and the UMB Subpoena.

**The AT&T Subpoena and Equity 4 U Subpoenas.** The information sought via the AT&T Subpoena and Equity 4 U Subpoena—again to the extent relevant—is also available from TruWarranty. TruWarranty has collected data from its representatives' phones linked to the numbers identified in the AT&T Subpoena and will make available information responsive to the Discovery Requests. McMillian Decl., ¶ 31–33.

The same is true with respect to the Equity 4 U Subpoena. TruWarranty has the documents/communications sought by the Equity 4 U Subpoena, and, if served with a proper discovery request, will produce responsive information. *Id.*, ¶ 36–37.

\*       \*       \*

Plaintiffs' "spray and pray" strategy is bad enough with respect to the parties to the litigation. But subjecting non-parties to these fishing expeditions with overlapping subpoenas before party discovery begins in earnest goes too far. While there may well be negotiation between Plaintiffs and TruWarranty regarding the Discovery Requests' relevance and proportionality, that is the process required under Rules 26 and 34. Plaintiffs cannot end-run regular party discovery with duplicative subpoenas to third parties. *See, e.g., BNSF Railway Co. v. Ctr. for Asbestos Related Disease, Inc.*, No. 19-cv-00040, 2022 WL 1442854, at \*4 (D. Mont. May 6, 2022) (holding that "Rule 45 is not designed to provide an end-run around the regular discovery process under Rules 26 and 34" and that "when information requested in a subpoena is available from a party to the action, any burden it imposes may be undue" (cleaned up)); *Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 339–40 (D.D.C. Nov. 5, 2021) (quashing

third-party subpoena and holding that when "potentially important legal rights are implicated by a subpoena and alternative sources are more convenient or less burdensome, those alternatives should be explored first" (cleaned up)).

The overlap between the Discovery Requests and the Subpoenas is obvious, and Plaintiffs should not be permitted to end-run the regular discovery process with the parties by obtaining this information from third parties. This is, of course, just one of the deficiencies of these Subpoenas. As explained below, the Subpoenas are particularly inappropriate here because they are so plainly overbroad and unduly burdensome. And Plaintiffs—competitors in the F&I Products business— request the confidential and trade-secret information of TruWarranty, TruWarranty's co-defendants, and third parties to this litigation.

## III. The Subpoenas Seek Information That Is Neither Relevant Nor Proportional to the Needs of this Case.

A subpoena imposes an "undue burden" when, among other factors, the discovery sought "is unreasonably cumulative or duplicative" or "the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source." *Taylor v. City of Chicago*, No. 14 C 737, 2015 WL 6561437, at *3 (N.D. Ill. Oct. 29, 2015). In addition to the undue burden created by the fact that the information is readily available from the parties, the Subpoenas should also be quashed because the requests for documents therein are largely irrelevant and not proportional to any claims or defenses in this case. *See Colborn*, 608 F. Supp. 3d at 740–41 (applying Rule 26's relevance and proportionality standard to third-party subpoena); *DeLeon–Reyes v. Guevara*, Nos. 18 C 1028 & 18 C 2312, 2019 WL 4278043, at *9 (N.D. Ill. Sept. 10, 2019) (The Court "must exercise its discretion to limit discovery based upon relevance and

proportionality under Rule 26(b)(1).").   The examples of the obvious lack of relevance and overbreadth are many, but a few examples make the point.[6]

**The PCMI Subpoena.**   The vast majority of the information demanded in the PCMI Subpoena is irrelevant to this case.   The requested PCRS reports concern (1) the status of all remitted and pending F&I Products contracts; (2) payments made concerning claims; (3) paid claims against earned reserves and resulting loss ratios; and (4) reinsurance summary reports concerning the underlying reserves and reinsurance positions.   McMillian Decl., ¶¶ 6, 10–11. None of these reports are relevant to this case.

This case is about TruWarranty's alleged payment of commissions to co-defendants and interference with Plaintiffs' purported contracts and relationships.   While there are thousands of contracts sold during Plaintiffs' relationship with TruWarranty that are still in force, none of the information about those contracts, claims made on those contracts, loss ratios, and reinsurance reports relate to those F&I Product portfolios matter here.

The PCMI Subpoena is also wildly overbroad with respect to third parties referenced therein.   For starters, the Subpoena seeks information regarding parties—Brennan and Dales Reinsurance Company and "Chris Vitito Business"—not mentioned in the Amended Complaint. The fact that TruWarranty may have done business with these entities does not suggest PCRS reports relating to them might be relevant.[7]   Indeed, Chris Vitito and Brennan and Dales

---

[6] TruWarranty does not contend that the Equity 4 U Subpoena is overbroad and unduly burdensome, at least as it relates to TruWarranty—merely that the documents requested therein should be sought from TruWarranty.

[7] In the PCMI Subpoena, Plaintiffs assert that the "Chris Vitito Businesses" were working with TruWarranty at the time of the alleged tortious interference with Plaintiffs' purported relationship with Morgan Auto Group, McMillian Decl., Ex. C, PCMI Subpoena at p. 5, but this does not explain why "all PCRS reports" for any of several "Chris Vitito Businesses" that might contain information regarding those businesses, *but that are unrelated to Morgan Auto and unrelated to Plaintiffs' claims*, would be relevant here.

Reinsurance have done business with TruWarranty that has nothing to do with Plaintiffs or the allegations in this case. McMillian Decl., ¶¶ 14 and 20. The same is true of Defendant CRT. *Id.*, ¶ 12–13.

This is also true of Morgan Auto, a group of auto dealers in Florida. The reports that Plaintiffs seek regarding Morgan Auto contain a wide variety of information regarding TruWarranty's business and Morgan Auto Group's business, including commissions and other fees paid to third parties relating to sales of F&I Products to Morgan Auto Group's customers. *Id.*, ¶ 16. Morgan Auto Group also holds reinsurance positions with respect to products sold to those customers. *Id.* None of this information is relevant to Plaintiffs' claims.

**The UMB Subpoena.** The UMB Subpoena is equally overbroad, seeking, among other things, for the period November 1, 2020, to September 1, 2023: (1) "[a]ll documents and communications relating to any and all accounts which were/are maintained by TruWarranty, either individually or jointly with another"; (2) "all monthly bank statements for any account owned by TruWarranty;" (3) "all cession statements for any account owned by TruWarranty;" (4) all "new account forms, documents reflecting investment objectives, account statements, questionnaires, or portfolio information;" and (5) "all communications regarding the accounts of TruWarranty, including but not limited to phone logs and notes, as well as computer on-line access logs." McMillian Decl., Ex. E. On their face, these requests are overbroad in that they do not concern Plaintiffs or the issues in the case.

Plaintiffs want "all" of UMB's documents and communications regarding TruWarranty's master custodial account and any of the approximately 100 subaccounts thereunder, which would give Plaintiffs access to the detailed workings of trust accounts that are entirely unrelated to this case. And what possible relevance would documents regarding those accounts be to Plaintiffs'

17

case?  The same is true of account forms, documents reflecting investment objectives, and documents reflecting portfolio information.  Similarly, what would UMB's "phone logs and notes as well as computer on-line access" show about the subject payments TruWarranty made to Spencer Walters or related entities on the sale of TruWarranty products to Kunes customers or the alleged interference with Plaintiffs' purported relationships?  Nothing.  This is little more than harassment of TruWarranty and its primary financial institution.

**The AT&T Subpoena.**  The AT&T Subpoena seeks "ALL records and communications concerning any Communication," for Taylor Lansford's business cellphone and Ron Gardner's personal cellphone, including information about all calls and all text messages in any format from November 1, 2020 to September 1, 2023.  McMillian Decl., Ex. G.  Again, this is on its face overbroad and unduly burdensome.  Naturally, Mr. Lansford's business cellphone has a great deal of information on it relating to his work for TruWarranty that has nothing at all to do with Plaintiffs or this case.  And the overbreadth is even more obvious with respect to Mr. Gardner's *personal* cellphone, even if he occasionally used it for TruWarranty business.

Plaintiffs cannot possibly be entitled to see every single one of Mr. Lansford's and Mr. Gardner's communications on these phones—without regard to the counterparty to the communication or the subject of the communication—much less for a three-year period.  This is another obvious fishing expedition, and no law supports the request.  *See, e.g.*, *Crescent City Remodeling, LLC v. CMR Constr. & Roofing, LLC*, 643 F. Supp. 3d 613, 619 (E.D. La. Dec. 2, 2022) (noting that plaintiff "fails to explain how the mere existence of incoming or outgoing local or long-distance calls . . . has any relevance to the claim or defense in this case" and, likewise, stating "the request for every incoming or outgoing text message without regard to parties involved or subject matter content of the message is patently overbroad … .");  *Scott v. Complete Logistical*

18

*Servs., LLC*, No. 19-cv-11672, 2021 WL 3013111, at *2 (E.D. La. July 16, 2021) (quashing subpoena seeking "nearly two full years of cell phone records—including calls and text messages—without any limiting focus as to the context or subject of those communications" because the information sought was disproportional to the needs of the case "[w]ithout a more tailored approach").

*     *     *

The vast majority of the information Plaintiffs seek is neither relevant nor proportional to the needs of this case. The Subpoenas should be quashed or otherwise rendered unenforceable for this reason alone.

## IV. The Subpoenas Improperly Seek TruWarranty's Confidential Trade-Secret Information or Confidential Commercial Information.

Rule 45(c)(3)(B)(i) expressly gives the Court the authority to quash subpoenas that require "disclosing a trade secret or other confidential . . . commercial information." "It is an appropriate reason to quash a subpoena . . . when the subpoena is being used to secure some type of a competitive advantage." Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2463.1 (3d ed.). "To compel the disclosure of trade secrets pursuant to a subpoena, the serving party must show 'a substantial need for the testimony or material that cannot be otherwise met without undue hardship.' Stated another way, the serving party must demonstrate that the disclosure of trade secrets is both relevant and necessary to the underlying litigation." *Luiken v. Runzheimer Int'l Ltd.*, No. 11-MC-00034, 2011 WL 3423335, at *1 (E.D. Wis. Aug. 3, 2011) (citations omitted).[8]

---

[8] A protective order does not lessen this standard. *Luiken*, 2011 WL 3423335, at *1; *Bilek v. Nat'l Congress of Employers, Inc.*, No. 18 C 3083, 2020 WL 10963975, at *4 (N.D. Ill. May 21, 2020) (argument from subpoenaing party that "interests can be protected with an appropriate confidentiality order does not adequately address . . . concerns" raised in motion to quash; "[e]ntry of a confidentiality order is no protection against discovery that seeks production of large amounts of information that may not be relevant to the claims or defenses in a case or proportional to the needs of the case").

Much of the information Plaintiffs seeks is trade-secret or confidential commercial information. Courts within the Seventh Circuit have defined confidential commercial information as "important proprietary information that provides the business entity with a financial or competitive advantage when it is kept secret, and results in financial or competitive harm when it is released to the public." *Soto v. Kale Realty, LLC*, No. 13 C 8002, 2016 WL 11953040, at *3 (N.D. Ill. July 25, 2016). This definition of trade-secret or confidential commercial information extends to a large percentage of the documents Plaintiffs seek in their subpoenas. For example, the PCMI Subpoena seeks a great deal of confidential information concerning TruWarranty's business, its agents, and its customers. Specifically, the production of all PCRS reports Plaintiffs seek would (1) reveal components of the rate structure on TruWarranty's work with other dealers or agents, (2) reveal other information regarding the structure of TruWarranty's all-important administrative fee (which is one of its competitive advantages), and (3) operate as a customer list because the PCRS reports would identify other dealerships and agents TruWarranty works with. *See* McMillian Decl., ¶¶ 17–18. Revealing this information to Plaintiffs—would-be competitors of TruWarranty—could significantly injure TruWarranty's competitive advantage in the F&I Products marketplace. *Id.*

The UMB and AT&T Subpoenas similarly risk disclosure of trade-secret or confidential commercial information. The documents sought by the UMB Subpoena would reveal sensitive financial information, including bank accounts, portfolio information, and investment objectives, as well as the names of TruWarranty's agents, customers, and other entities with which TruWarranty conducts business—information that Plaintiffs would doubtless use against TruWarranty's interests and in furtherance of their own. *Id.*, ¶¶ 28–29. And the information sought by the AT&T Subpoena—including *all communications* from two of TruWarranty's key

representatives—likely includes confidential commercial information regarding TruWarranty's rate, structure, customers, and business strategies. *Id.*, ¶ 34.

Because Plaintiffs seek TruWarranty's trade-secret and other confidential commercial information in the Subpoenas, the burden now shifts to Plaintiffs to show that disclosure of this information is "both relevant *and* necessary to the underlying litigation." *Luiken*, 2011 WL 3423335, at *1 (emphasis in original). Plaintiffs cannot carry their burden. As TruWarranty has explained elsewhere, nearly all of the requested information is irrelevant and not proportional to the needs of this case. The Court should, therefore, quash Plaintiffs' subpoenas in their entirety. *See Bilek*, 2020 WL 10963975, at *4 ("[I]t is not the Court's job, in the first instance to redline or blue pencil Plaintiff[s'] overbroad subpoenas toward the end of modifying them so they seek only information that may be relevant and proportional to the needs of this case.").

## CONCLUSION

For these reasons, the Court should quash Plaintiffs' subpoenas to PCMI Corporation, PCMI, LLC, UMB Financial Corporation, AT&T Corporation, and Equity 4 U, Inc.


Dated July 12, 2024.                      Respectfully submitted,

                                          */s/ David Wenthold*
                                          Bryan B. House
                                          David Wenthold
                                          Parker White
                                          Foley & Lardner LLP
                                          777 East Wisconsin Avenue
                                          Milwaukee WI  53202
                                          (414) 271-2400
                                          Email:  bhouse@foley.com
                                          Email:  dwenthold@foley.com
                                          Email:  pwhite@foley.com

                                          *Attorneys for SideCars, Inc., d/b/a*
                                          *TruWarranty*

21